**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| ROBERT BUSSARD and DANIEL GIBSON, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>BRYAN HEALTH,<br><br>Defendant. | Case No. 4:24-cv-03214-SMB-MDN |

**DEFENDANT BRYAN HEALTH'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MEMORANDUM IN SUPPORT**

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Bryan Health, by and through its undersigned attorneys, hereby respectfully moves the Court for an order dismissing the Complaint in its entirety, with prejudice. The grounds for this request are more fully set forth in the accompanying Memorandum in Support.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..... ii

I. INTRODUCTION ..... 1

II. FACTUAL BACKGROUND ..... 3

A. Bryan Health Is a Nebraska Healthcare Provider Who Provides a Website for All Members of the Public to Learn About the Services Bryan Health Provides. ..... 3

B. Bryan Health has a privacy policy through which users consented to Use of Cookies. 4

C. The Meta Pixel Allegedly Caused Plaintiffs' Browsing Activity on the Bryan Health Website to be Disclosed to Meta. ..... 5

III. LEGAL STANDARD ..... 6

IV. ARGUMENT ..... 7

A. Count I Violation of Common Law Invasion of Privacy - Intrusion Upon Seclusion. 7

B. Count II: Federal Wiretap Act (18 U.S.C. § 2510) ..... 10

1. Bryan Health did not intentionally procure another person (Meta) to intercept any communication. ..... 10

2. Bryan Health is a "party" to the communication and therefore cannot "intercept" what it was intended to receive. ..... 11

3. The "crime tort" exception to the "party exemption" does not apply. ..... 12

*a. To satisfy the crime-tort exception under HIPAA the disclosed information must relate to the past, present, or future physical or mental health or condition of an individual.* ..... 13

*b. Plaintiffs allege Bryan Health transmitted only general and public information which cannot constitute a HIPAA violation.* ..... 15

*c. Plaintiffs' remaining allegations fail to meet the standard to invoke the crime-tort exception.* ..... 16

*d. Plaintiffs allege Bryan Health's "primary motivation" was commercial, not criminal or tortious.* ..... 17

4. The Complaint does not allege Bryan Health captured the "contents" of any communication. ..... 18

5. Plaintiffs ECPA claim should be dismissed because it was not brought within the statute of limitations. ..... 20

C. Count IV The Nebraska Wiretap Act (Neb. Rev. Stat. § 86-297) ..... 20

D. Count III Breach of Implied Contract ..... 21

V. CONCLUSION ..... 23

**TABLE OF AUTHORITIES**

Page(s)

Cases

*Am. Hosp. Ass'n v. Becerra*,
No. 4:23-CV-01110-P, 2024 WL 3075865 (N.D. Tex. June 20, 2024)............................... 2, 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................... 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)............................................................................................... 6, 7

*Bonness v. Armitage*,
305 Neb. 747, 942 N.W.2d 238 (2020)....................................................................... 20

*Braden v. Wal-Mart Stores, Inc.*,
588 F.3d 585 (8th Cir. 2009) .................................................................................... 7

*Bristow v. Clevenger*,
80 F. Supp. 2d 421 (M.D. Pa. 2000) ......................................................................... 20

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) ..................................................................... 17

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010)....................................................................................... 12

*Chafin v. Wisconsin Province Society of Jesus*,
301 Neb. 94, 917 N.W.2d 821 (2018)......................................................................... 20

*Enervations, Inc. v. Minnesota Mining & Mfg. Co.*,
380 F.3d 1066 (8th Cir. 2004) .................................................................................. 4

*Goldstein v. Costco Wholesale Corp.*,
559 F. Supp. 3d 1318 (S.D. Fla. 2021) ...................................................................... 18

*Hartley v. Univ. of Chicago Med. Ctr.*,
No. 22 C 5891, 2023 WL 7386060 (N.D. Ill. Nov. 8, 2023)............................................ 15, 17

*Hopkins v. Saunders*,
199 F.3d 968 (8th Cir. 1999) .................................................................................... 6

*Illig v. Union Elec. Co.*,
652 F.3d 971 (8th Cir. 2011) .................................................................................... 7

*In re DoubleClick Inc. Privacy Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001)......................................................................... 12, 17

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015)...................................................................... 10, 11, 12

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........................................................................ 17

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) .................................................................................. 18

*J.C. v. Catholic Health Sys. Inc.*,
1:23-cv-00796(JLS)(JJM), 2024 WL 5136236 (S.D.N.Y. Aug. 29, 2024) ............................ 16

*Jones v. Bloomingdales.com, LLC*,
No. 23-3304, 2024 WL 5205528 (8th Cir. Dec. 24, 2024)................................................. 9, 18

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .......... 11
*Kurowski v. Rush Sys. for Health*,
22-5380, 2023 WL 4707184 (N.D. Ill. July 24, 2023) .......... 12
*Lehman v. Zumbrota-Mazeppa Pub. Schs.*,
No. 04-1226, 2005 WL 894756 (Minn. Ct. App. Apr. 19, 2005) .......... 8
*Linscott v. Shasteen*,
288 Neb. 276 (2014) .......... 21
*Mills v. City of Grand Forks*,
614 F.3d 495 (8th Cir. 2010) .......... 7
*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) .......... passim
*Okash v. Essentia Health*,
No. CV 23-482 (JRT/LIB), 2024 WL 1285779 (D. Minn. Mar. 26, 2024) .......... 8, 10, 12, 13
*Ryan v. Ryan*,
889 F.3d 499 (8th Cir. 2018) .......... 4
*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) .......... 14
*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018) .......... 15, 18
*State v. Strohl*,
255 Neb. 918, 587 N.W.2d 675 (Neb.1999) .......... 21
*State v. Strohl*,
669 F. App’x 340 (8th Cir. 2016) .......... 21
*Sussman v. American Broadcasting Cos.*,
186 F.3d 1200 (9th Cir. 1999) .......... 12, 17
*T.D. v. Piedmont Healthcare, Inc.*,
No. 1:23-CV-5416-TWT, 2024 WL 3972984 (N.D. Ga. Aug. 28, 2024) .......... 8, 22
*Topchian v. JPMorgan Chase Bank, N.A.*,
760 F.3d 843 (8th Cir. 2014) .......... 6
*United States v. Jiau*,
734 F.3d 147 (2d Cir. 2013) .......... 12
*Wilkinson v. Methodist, Richard Young Hosp.*,
259 Neb. 745, 612 N.W.2d 213 (2000) .......... 9
*Williams v. Raynor Rensch & Pfieffer*,
No. 8:11-CV-446, 2015 WL 2127095 (D. Neb. May 6, 2015) .......... 21

Statutes

18 U.S.C. § 2510 .......... 10, 18
18 U.S.C. § 2511 .......... 10, 12, 18
18 U.S.C. § 2520 .......... 20
Neb. Rev. Stat. Ann. § 20-203 .......... 8, 9
Neb. Rev. Stat. Ann. § 86-290(2)(b) .......... 21
Neb. Rev. Stat. § 86-297 .......... 20, 21

Rules

Fed. R. Civ. P. 12(b)(6)........................................................................................................ 1

Regulations

45 C.F.R. § 10.103 ............................................................................................................ 14

## I. INTRODUCTION

This is a privacy action. Plaintiffs allege when they visited public portions of Defendant Bryan Health's website at https://www.bryanhealth.com/ (the "Website"), the Website shared the specific pages the users visited with Meta (formerly known as Facebook). The complaint does not allege Bryan Health transmitted information from any portion of the Website that was not publicly available. There is no allegation patients who had logged into a "patient portal" (e.g., MyChart) or any portion of the Website that required users to enter a username, password, or other authentication had their information shared with any third party, including Meta. Neither does the complaint allege the Meta pixel was installed in a way that shared every page users visited with Meta.[1] Instead, the complaint alleges Bryan Health's Website was configured such that it was possible to send limited information to Meta: (1) when a user used the "Find a Doctor"[2] feature to look up profiles for Bryan Health providers by selecting pre-defined options such as specialty, office name, gender, or by searching for the provider's name; and (2) when a user entered a search term, such as "diabetes," into the search bar.[3]

The complaint alleges this behavior violates both Federal and Nebraska State wiretapping laws, breaches an implied contract, and intrudes upon Plaintiffs' right to seclusion. Numerous other courts have already disagreed and dismissed such claims. Critically, both the Federal

[1] Bryan Health disputes that the Meta Pixel was installed and shared any information. For purposes of this motion, however, Bryan Health treats the non-conclusory factual allegations in the complaint as true.

[2] This "Find a Doctor" feature operates much as the "Meet our Legal Team" operates on law firm websites. *Compare* https://www.bryanhealth.com/find-a-doctor/ *with* https://www.huschblackwell.com/people (allowing user to search by industry, office, and service) *and* https://zlk.com/attorneys (allowing users to search by attorney name and practice area). Plaintiffs' counsel uses the Meta Pixel on this page as well.

[3] Although the complaint at times separately mentions "searching for and filtering through doctors by specialty" and "looking for locations of care", *see, e.g.*, Filing No. 1, ¶ 105, both are part of the "Find a Doctor" feature. Plaintiffs' screenshots confirm this. *Id.* at ¶¶ 94–98.

Electronic Communications Privacy Act ("ECPA") and the Nebraska act are "one party consent" states; meaning only one party to the communication must consent for the communication to be recorded and/or shared with others. Because Bryan Health was the intended recipient of these "communications," it is covered by the "party exception." Dismissal of Plaintiffs' wiretapping claims is therefore required.

To try and overcome this death knell to the wiretapping claims, the complaint alleges the recording and sharing of information was performed for some criminal or tortious purpose. Although both the ECPA and Nebraska laws have a "crime-tort" exception to the one-party exemption, the exception is "construed narrowly" and does not apply to the alleged facts. The complaint seems to allege (though never stating outright) that the crime tort exception applies because Bryan Health has violated HIPAA by sharing the alleged information (IIHI or PHI) with Meta. Under Plaintiffs own allegations, however, the Website at *most* shares when a user has searched for a doctor by location or specialty or has entered a term (e.g., diabetes) in the search box. Numerous courts have considered and rejected claims that sharing this type of information violates HIPAA. In July 2024, a Northern District of Texas District Court put it succinctly: "Simply put, **Identity** (Person A) + **Query** (Condition B) ≠ **IIHI** (Person A has Condition B)." *Am. Hosp. Ass'n v. Becerra*, No. 4:23-CV-01110-P, 2024 WL 3075865, at *14 (N.D. Tex. June 20, 2024) (emphasis in original).

Neither can Plaintiffs allege the claimed "intrusion upon seclusion" tort invokes the crime-tort exception. Numerous courts have rejected similar claims, finding when the plaintiffs provide the information, as here, it cannot be an "intrusion." Plaintiffs' intrusion upon seclusion claim therefore fails, must be dismissed, and cannot serve as the basis to invoke the crime-tort exception.

Because the alleged actions do not violate HIPAA or any other tort, the crime-tort

exception cannot apply. Bryan Health is therefore entitled to the party exemption and the wiretapping and tort claims must be dismissed.

Finally, Plaintiffs' breach of contract claim should also be dismissed because Plaintiffs cannot allege the formation of any implied contract where they do not (and cannot) allege they provided anything other than their data upon their own violation. Moreover, the contract claim must be dismissed because Plaintiffs cannot allege they suffered any damage from any alleged breach. Courts routinely dismiss implied contract claims upon similar facts.

## II. FACTUAL BACKGROUND

### A. Bryan Health Is a Nebraska Healthcare Provider Who Provides a Website for All Members of the Public to Learn About the Services Bryan Health Provides.

Defendant Bryan Health is a non-profit health system company with headquarters in Lincoln, Nebraska. Filing No. 1, ¶ 27. Like most modern businesses, Bryan Health has a website: . *Id.*, ¶ 1. Visitors to the Website—via pre-defined links and existing webpages—can: read about various treatment services Bryan Health provides; find a location where Bryan Health provides those services; learn about what to expect, look up visiting hours, purchase Bryan apparel; see when pre-scheduled classes and podcasts will occur; and look up a doctor based on their name, gender, city, specialty, and/or office name. *See* ; Filing No. 1, ¶ 1.

Plaintiffs allege Bryan Health has violated various laws by using a "snippet of computer code" known as the "Meta Pixel" (the "Pixel") on the Website. *Id.*, ¶ 6. The Pixel monitors for events specified by Bryan Health and sends data to Meta whenever that Pixel Event occurs on the Website. *Id.*, at ¶ 7. Plaintiffs allege Bryan Health has configured the Pixel to transmit data to Meta any time a user visits a webpage with a PageView, SubscribedButtonClick, and FindLocation pixel event active on the webpage. *Id.* "Depending on the activity this information ***may*** include explicit details regarding that Tracked User's ***potential*** or actual medical conditions, along with symptoms

they *may* be experiencing." *Id.* at ¶ 13 (emphasized).

According to Plaintiffs, Bryan Health's use of the Pixel allows it "to analyze user experiences and behavior on the Website to assess the Website's traffic and functionality" and to "target or retarget their Tracked Users with advertisements, along with measuring how well those advertisements are working." *Id.*, ¶ 10; *see also id.* at ¶ 18 (alleging Bryan Health disclosed the information to Facebook "to further Defendant's own commercial interests.").

### B. Bryan Health has a privacy policy through which users consented to Use of Cookies.

Plaintiffs allege they believed Bryan Health would safeguard their information in part because of statements in Bryan Health's Website Privacy Policy (the "Privacy Policy"). *Id.*, ¶ 3 (citing *Website Privacy Notice*, BRYAN HEALTH, ). The Privacy Policy "describes how Defendant may use and disclose information about Tracked Users to others outside Bryan." *Id.*[4] Specifically, the Policy explains website visitors "may be asked to volunteer your name, e-mail, address and telephone number" and that Bryan Health considers this "personal information' because it can be used to identify or contact you." Ex. A to Hiser Declaration. "When this information is combined with any information on your health or medical status, we refer to this information as 'health-related personal information'" *Id.* The Privacy Policy states "[w]e do not intend to use or disclose any personal information or health-related personal information you provide on our site to an unrelated third party without your expressed permission, except as explained in this section," *Ex. A*; *see also* Filing No. 1, ¶ 3. The "health-related personal information" refers to the "name, e-mail, address and telephone number" plus "any information on your health or medical status." Ex. A.

[4] The Court can consider and take judicial notice of the Privacy Policy in connection with this motion. *Ryan v. Ryan*, 889 F.3d 499, 505 (8th Cir. 2018); *Enervations, Inc. v. Minnesota Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004). A copy of the Privacy Policy as it existed when Plaintiffs filed their complaint is attached as Exhibit A to the Declaration of Dan Hiser.

The Policy also discloses that "Our Site Uses Cookies." *Id*. As part of that section, Bryan Health discloses:

> In addition to collecting information that you submit to us, we also rely on "cookies". A cookie is a numeric code that a website transfers to your hard drive for record-keeping purposes. Every computer is assigned a different cookie, but our cookie does not contain or collect your name or other personal identifying information. When you revisit our site, the cookie may allow us to recognize you, your interests and your preferences. We also use cookies to help track the level of interest in different features on our site and to compile data that can help us improve our content.

*Id*.

**C. The Meta Pixel Allegedly Caused Plaintiffs' Browsing Activity on the Bryan Health Website to be Disclosed to Meta.**

Plaintiff Robert Bussard ("Bussard") began visiting the Website "[i]n or around 2012." Filing No. 1, ¶ 25. He has a Facebook account and has been a user of Facebook since around 2008. *Id.* He has "used the Website to search for information related to health conditions or suspected health conditions . . . for both himself, and his family members." *Id.*

Bussard does not allege he is a Bryan Health patient or has ever received medical treatment from a Bryan Health physician. He does not allege he accessed any "patient portal" or any other site on the Website that was not publicly available. Bussard does not allege he has diabetes or otherwise specify what "health conditions" for which he searched on the Website. Neither does he allege he was actually shown advertisements for any of those health conditions by any third party, including Meta.

Plaintiff Daniel Gibson ("Gibson") began visiting the Website "[i]n or around 2021." *Id.* at ¶ 26. He has been a Facebook user and had an account since 2009. *Id.* Gibson has used the Website to search for doctors and Bryan Health hospital locations, "for both himself, and his family members." *Id*. He has also utilized the Website "to search for information related to his actual and suspected health conditions." *Id.*

Gibson does not allege he is a Bryan Health patient or has ever received medical treatment from a Bryan Health physician. He does not allege he accessed any "patient portal" or any other site on the Website that was not publicly available. Gibson does not allege he has diabetes or otherwise specify what "health conditions" for which he searched on the Website. Neither does he allege he was actually shown advertisements for any of those health conditions by any third party, including Meta.

Rather than alleging Plaintiffs themselves were shown advertisements for their own medical conditions after disclosing that information to Bryan Health, the complaint instead refers to what information *may* be shared with Facebook when an undefined "Tracked User" uses the Website. *See* Filing No. 1, ¶ 94 ("To **demonstrate** the Pixel's operation on the Website, Tracked Users **can** utilize the Website to find a doctor, by clicking 'find a doctor,' . . . .") (emphasized). The complaint alleges Bryan Health's use of the Pixel collectively discloses only three things to Meta: (1) searches for specific symptoms, illnesses, etc.; (2) searching for and filtering through doctors by specialty; and (3) looking for locations of care. *Id.* at ¶¶ 94–105. Plaintiffs do not allege Bryan Health utilizes the Pixel on the "My Health" portion of the Website, with any patient portal, or any non-public portion of the Website (i.e., that requires users to log-in with access credentials).

## III. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The purpose of the plausibility standard "is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)).

This standard does not require the inclusion of detailed factual allegations in a pleading,

but the complaint must contain facts with enough specificity "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although the Court accepts as true all factual allegations in the complaint and draws all reasonable inferences in favor of the nonmoving party, factual allegations that represent "legal conclusions or formulaic recitation of the elements of a cause of action . . . may properly be set aside." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

When deciding a motion to dismiss, the court may "consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record." *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (quoting *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010)).

## IV. ARGUMENT

Although Plaintiffs claim they seek damages associated with Bryan Health's alleged "violation of their privacy rights under the Federal Wiretap Act, . . . the Nebraska's [sic] Wiretap Act, . . . and common law claims for invasion of privacy, breach of contract, negligence, and instruction upon seclusion," Filing No. 1, ¶ 2, Plaintiffs assert only four counts: (1) Violation of Common Law Invasion of Privacy – Intrusion Upon Seclusion; (2) Violation of the Federal Wiretap Act; (3) Breach of Implied Contract; and (4) Violation of the Nebraska Wiretap Act, *id.* at ¶¶ 188–246. Regardless, Plaintiffs have failed to state a claim for each count.

### A. Count I Violation of Common Law Invasion of Privacy - Intrusion Upon Seclusion

Nebraska has codified the tort of intrusion upon seclusion as Neb. Rev. Stat. Ann. § 20-203, which provides: "Any person, firm, or corporation that trespasses or intrudes upon any natural

person in his or her place of solitude or seclusion, if the intrusion would be highly offensive to a reasonable person, shall be liable for invasion of privacy." *Id.*

The Court should dismiss this claim because Bryan Health did not "intrude" upon Plaintiffs in their place of seclusion because Plaintiffs provided the information to Bryan Health. Courts, including those in the Eighth Circuit agree: "There is no intrusion upon privacy when a patient voluntarily provides personally identifiable information and protected health information to his or her healthcare provider." *T.D. v. Piedmont Healthcare, Inc*., No. 1:23-CV-5416-TWT, 2024 WL 3972984, at *2 (N.D. Ga. Aug. 28, 2024) (collecting cases from North Carolina, Minnesota, Pennsylvania, and Washington); *see, also*, *Okash v. Essentia Health*, No. CV 23-482 (JRT/LIB), 2024 WL 1285779, at *7 (D. Minn. Mar. 26, 2024) ("[W]hen a plaintiff voluntarily browses a healthcare website, there is no intrusion when the Pixel transmits the information to Meta."). That is because intrusion requires an "affirmative act by the defendant in obtaining the information" which cannot exist when the information is provided by the plaintiff, even if a defendant later shares the information. *Lehman v. Zumbrota-Mazeppa Pub. Schs*., No. 04-1226, 2005 WL 894756, at *4 (Minn. Ct. App. Apr. 19, 2005). Plaintiffs allege they provided their information (e.g., search terms, how they filtered the view of doctors by specialty or location) directly to Bryan Health. Filing No. 1, ¶ 217 ("Plaintiffs . . . provided their PHI to Defendant in exchange for services . . . ."). Plaintiffs' intrusion upon seclusion claim must therefore be dismissed. *Nienaber v. Overlake Hosp. Med. Ctr*., 733 F. Supp. 3d 1072, 1088–89 (W.D. Wash. 2024) ("Plaintiff's claim for invasion of privacy is rooted in her allegations that she willfully shared private information with Defendant, which Defendant then shared with third parties. . . . Because Plaintiff voluntarily shared her information with Defendant, there was no *intrusion* upon Plaintiff's solitude, seclusion, or private affairs by Defendant.") (emphasis in original).

The Court should also dismiss the intrusion upon seclusion claim because once the information was shared with Bryan Health, it was part of Bryan Health's records and a defendant cannot "intrude" upon their own records. *Wilkinson v. Methodist, Richard Young Hosp*., 259 Neb. 745, 748–49, 612 N.W.2d 213, 216 (2000) (sustaining dismissal of claim where defendant hospital obtained information from its own records). Here, Plaintiffs allege Bryan Health possessed the information as part of its records and then transmitted it to Meta. *See, e.g.*, Filing No. 1, ¶ 7 ("Defendant's sharing of Tracked User's PHI with Facebook"), ¶ 8 ("Defendant share[d] the PHI . . . as one data point to Facebook."); ¶ 107 ("Facebook receives information from Defendant"); ¶ 108 ("Defendant purposefully shares their users' PHI with Facebook . . . ."). Because the information was part of Bryan Health's own records before it was allegedly shared with any third party, there can be no intrusion. *Wilkinson*, 259 Neb. at 748–49.

Even if the Court were to find an intrusion existed, dismissal is still appropriate because any such intrusion would not "be highly offensive to a reasonable person." Neb. Rev. Stat. § 20-203. As discussed more fully in Section IV.B, below, the disclosure of the alleged information would not be highly offensive to a reasonable person. *See, also*, *Jones v. Bloomingdales.com, LLC*, No. 23-3304, 2024 WL 5205528, at *3 (8th Cir. Dec. 24, 2024) ("We fail to see how this invades Jones's privacy, especially when she voluntarily conveyed the information she says is private to the defendants . . . .").

Plaintiffs allege they possessed a reasonable expectation of privacy "based on the belief that Defendant would abide by state criminal laws, such as the Federal Wiretap Act . . . and HIPPA (sic)." Filing No. 1, ¶ 192. Not only are both laws Federal, not "state criminal laws," but Plaintiffs also incorrectly claim the Wiretap Act "prohibits Defendant from intercepting communications between patients . . . and their healthcare providers [i.e., Defendant] without the consent of all

parties involved in the communication." *Id.* There cannot be an interception by Defendant, who is the healthcare provider. Moreover, the Wiretap Act requires only the consent of one party to the communication. 18 U.S.C. § 2511(2)(d). Plaintiffs' belief is unfounded and not reasonable.

**B. Count II: Federal Wiretap Act (18 U.S.C. § 2510)**

"The Electronic Communications Privacy Act ('ECPA'), 18 U.S.C. § 2510 et seq., prohibits the intentional interception of 'any wire, oral, or electronic communication,' as well as the use or disclosure of any 'content[s]' thereof." *Okash*, 2024 WL 1285779, at *3 (citing 18 U.S.C. § 2511(1)). To plead a prima facie case under the Wiretap Act, a plaintiff must plausibly plead the defendant: (1) intentionally (2) intercepted, endeavored to intercept, or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device. *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 135 (3d Cir. 2015).

Plaintiffs' claims should be dismissed because: (1) Bryan Health did not procure Meta to intercept any communication; (2) Bryan Health did not itself intercept any communication because it is a party to—and the intended recipient of—the communication; (3) Bryan Health did not commit and crime or tory that would invalidate this "party exception"; (4) the Complaint does not allege Bryan Health intercepted or shared the "contents" of any communication; and (5) Plaintiffs' claims are barred by the statute of limitations.

<u>1. Bryan Health did not intentionally procure another person (Meta) to intercept any communication.</u>

Bryan Health did not procure Meta to intercept anything because the complaint alleges Bryan Health shared information from its own records and storage. Thus, there is no "interception" by Meta that Bryan Health could "procure."

Plaintiffs repeatedly allege they communicated with Bryan Health, which then in turn

shared information with Facebook. *See, e.g.*, Filing No. 1, ¶ 7 ("Defendant's sharing of Tracked User's PHI with Facebook."); *id.* ("[T]he Website triggers one or more of the Pixel Events and the user's PHI is automatically shared with Facebook."); *id.* at ¶ 8 ("Defendant shares the PHI . . . as one data point to Facebook."). Because Plaintiffs allege "Facebook receives information from Defendant," *id.* at ¶ 107, and not from Plaintiffs, there can be no "interception" by Meta that Bryan Health procured. *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) ("We therefore hold that for a website such as Konop's to be 'intercepted' in violation of the Wiretap Act, it must be acquired during transmission, not while it is in electronic storage.").

2. Bryan Health is a "party" to the communication and therefore cannot "intercept" what it was intended to receive.

Plaintiffs allege they communicated with Bryan Health via the website. *See, e.g.*, Filing No. 1, ¶ 214 ("Defendant's interception of these communications occurred contemporaneously with Plaintiffs and Class Members sending and receiving those communications."). Because Bryan Health was a party to that communication, however, it cannot "intercept" that which is intended for it. 18 U.S.C. § 2511(2)(d); *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 143 (3d Cir. 2015) ("As the intended recipient of a communication is necessarily one of its parties, and the defendants were the intended recipients of the GET requests they acquired here, the defendants were parties to the transmissions at issue in this case. And under § 2511(2)(d), it is not unlawful for a private person 'to intercept a wire, oral, or electronic communication where such person is a party to the communication.'") (quoting 18 U.S.C. § 2511(2)(d)). "The [party] exception applies even to an intended recipient that duplicates and forwards the communication to a third party." *Okash*, 2024 WL 1285779, at *3.

Neither did Bryan Health unlawfully "use" or "disclose" the communications. Section 2511(1) prohibits only "the use or disclosure of communications a party knows to be 'obtained

through the interception' of communications 'in violation of this subsection.'" *Id.* at *4 (citing 18 U.S.C. § 2511(1)(c)–(d)). Because Bryan Health was a party to the communication, any alleged interception is not unlawful. *Id.* And because Bryan Health—a party to the communication—consented to Meta's receipt of the message, there is no violation of the ECPA. *Id.*

3. The "crime tort" exception to the "party exemption" does not apply.

Under the ECPA, the party exemption does not apply *only* if the party intercepts the communication "for the purpose of committing any criminal or tortious act." 18 U.S.C. § 2511(2)(d). This "crime-tort exception" is "construed narrowly." *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 515 (S.D.N.Y. 2001). "'[I]t is well established that' the crime-tort exception 'only applies where the defendant allegedly committed a tortious or criminal act **independent** from the act of recording itself.'" *Okash*, 2024 WL 1285779, at *4 (emphasized) (quoting *Kurowski v. Rush Sys. for Health (Kurowski II)*, No 22-5380, 2023 WL 4707184, at *4 (N.D. Ill. July 24, 2023)); *see also Caro v. Weintraub*, 618 F.3d 94, 98 (2d Cir. 2010) (holding "the defendant must have the intent to use the illicit recording to commit a tort [or] crime **beyond** the act of recording itself" for the crime-tort exception to apply) (emphasized) (citing *Sussman v. American Broadcasting Cos.*, 186 F.3d 1200, 1201 (9th Cir. 1999)). "In other words, the bad acts must be 'secondary to the acquisition of the communication' and involve 'tortious or criminal use of the interception's fruits.'" *Okash*, 2024 WL 1285779 at *4 (citing *re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d at 145) *see also United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013) (confining the crime-tort exception to "instances where the recording party intends to use the recording to harm or injure a recorded party, such as to blackmail, threaten, or publicly embarrass the recorded party")).

Plaintiffs' complaint does not—and cannot—allege sufficient facts to satisfy the high standard to invoke the "narrowly construed" crime-tort exception. The words "crime" and "tort"

do not appear in the complaint. As part of their "intrusion upon seclusion" claim, Plaintiffs allege they "possessed a reasonable expectation of privacy based on the belief that Defendant would abide by state criminal laws, such as the Federal Wiretap Act . . . and HIPAA." Filing No. 1, ¶ 192. These allegations, however, "encompass only the simultaneous interception and disclosure of information to Meta" and therefore cannot satisfy the separate crime-tort requirement. *Okash*, 2024 WL 1285779, at *4 (finding crime-tort exception did not apply). Regardless, the information Plaintiffs allege to be shared with Meta does not violate HIPAA and therefore cannot be used to invoke the crime-tort exception. Plaintiffs' remaining non-HIPAA allegations also cannot invoke the crime-tort exception.

*a. To satisfy the crime-tort exception under HIPAA the disclosed information must relate to the past, present, or future physical or mental health or condition of an individual.*

Even assuming the alleged interception and HIPAA violation were separate actions (which they are not), the information Plaintiffs allege was transmitted to Meta does not constitute a HIPAA violation. In determining whether an alleged HIPAA violation can satisfy the crime-tort exception, courts look at what information the plaintiffs specifically allege was shared with a third party. *See, e.g.*, *Nienaber*, 733 F. Supp. 3d at 1081–1083; *Kurowski v. Rush System for Health*, Case No. 22 C 5380 (N.D. Ill.).[5]

In *Nienaber*, the court distinguished between "the transmission of information submitted to a *private patient portal*" and "information from *unauthenticated* web pages" (i.e., pages that do not require a user to log in to access the website). 733 F. Supp. 3d at 1081–1082 (emphasis in original). While the former "reveals patient status, which in and of itself is protected health

[5] The *Kurowski* court issued four separate decisions evaluating Plaintiffs' attempt to allege facts sufficient to invoke the crime-tort exception: "*Kurowski I*", 2023 WL 2349606; "*Kurowski II*", 2023 WL 4707184; "*Kurowski III*", 2023 WL 8544084; and "*Kurowski IV*", 2024 WL 3455020.

information," the latter is actionable only "if the information disclosed demonstrates that the plaintiff's interactions plausibly relate to the provision of healthcare, or if the information connects a particular user to a particular healthcare provider (i.e., patient status)." *Id.* (collecting cases). "However, where nothing but browsing activity on a publicly available website is transmitted . . . 'the URLs, or the content of the pages located at those URLs, [do not relate] 'to the past, present, or future physical or mental health or condition of an individual.'" *Id.* at 1082 (quoting *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017) and 45 C.F.R. § 10.103)).

The *Nienaber* court held the plaintiff did not allege facts relating to the public website sufficient to invoke the crime-tort exception. *Id*. at 1083–1084. Although the plaintiff alleged "she used Defendant's website to request and schedule appointments" the court found "Plaintiff provides no additional factual information tying her actual activities to the allegations made by the hypothetical purportedly demonstrating disclosure of Private Information." *Id.* The *Nienaber* court also held sharing the results of a search bar accessible on a public website was not a HIPAA violation. *Id.* at 1084 ("But the example given simply shows a search on Defendant's Public Website for the word 'cancer' which pulled up generic information regarding certain services and general information on prostate cancer."). Unlike cases that found such a disclosure was actionable if combined with information that the visitor to the website is a patient of the defendant, the *Nienaber* court found the mere sharing of a general search term did not relate to the past, present, or future physical health or condition of an individual. *Id.*

As explained in the next section, this Court should follow the *Nienaber* court's guidance and find the complaint does not plausibly allege Bryan Health shared information that violates HIPAA and thus the crime-tort exception does not apply to overcome the party exemption under the ECPA.

*b. Plaintiffs allege Bryan Health transmitted only general and public information which cannot constitute a HIPAA violation.*

None of the information Plaintiffs allege was shared with Meta qualifies as PHI such that sharing the information would violate HIPAA. Rather than plead what PHI was transmitted to Meta, the complaint simply defines "PHI" as "private health information," Filing No. 1, ¶ 3, and conclusory and repeatedly alleges PHI exists and was misused by Bryan Health. *See id*. at ¶¶ 6, 7, 9, 14, 17–20, 22, 23, 30, 42, 93, 96, 98, 102, 104, 106, 108–110, 115, 117, 134, 136, 168, 172, 181, 206, 208, 212–214, 217–221, 228, 229, 230, 236, 243, 244. In each instance, Plaintiffs assume PHI exists and was shared without ever defining what that PHI includes. For example, in Paragraph 8 Plaintiffs allege "Defendant share[d] the PHI—i.e., Tracked Users' FID and PHI—as one data point to Facebook." *Id.* at ¶ 8. In other words, Plaintiffs define PHI to include PHI. The only specific information Plaintiffs allege Bryan Health transmits to Meta is: (1) searches for specific symptoms, illnesses, etc.; (2) searching for and filtering through doctors by specialty; and (3) looking for locations of care. Filing No. 1, ¶¶ 94–105; see also *id.* at ¶ 6 (identifying same information).

This, however, is not PHI. It is instead the standard "browsing history" that does not relate to the past, present, or future physical or mental health or condition of an individual. *Smith v. Facebook, Inc*., 745 F. App'x 8, 9 (9th Cir. 2018) ("Put simply, the connection between a person's browsing history and his or her own state of health is too tenuous to support Plaintiffs' contention that the disclosure requirements of HIPAA or section 1798.91 apply."); *Nienaber*, 733 F. Supp. 3d at 1084; *Hartley v. Univ. of Chicago Med. Ctr*., No. 22 C 5891, 2023 WL 7386060, at *2 (N.D. Ill. Nov. 8, 2023) ("[T]here is an absolute dearth of information specific to Plaintiff as what was disclosed to Facebook that would plausibly be in violation of HIPAA."). Indeed, Plaintiffs allege they often browsed the Website not for their own purposes, but for their family. Filing No. 1, ¶¶ 25,

26. Plaintiffs also allege Bryan Health's implementation of the Pixel is used for prospective users who are considering becoming patients. *Id.* at ¶¶ 99–100 (alleging Website search function "is used as a method to entice and maintain the Website visitors' interaction, including for *prospective* Tracked Users who are *considering becoming patients* of Defendant for specific conditions") (emphasized). Thus, the same information (e.g., the results of a search for "Diabetes" or the "find a doctor" is transmitted for non-patients and cannot qualify as PHI) because it does not relate to the past, present, or future physical or mental health or condition of a specified individual.

Plaintiffs allege Bryan Health's actions disclose PHI because "[b]y conducting a simple search for 'Diabetes' on the Website, the user tells Facebook that the Tracked User is likely diabetic or is looking for a doctor to help assess a [sic] diabetes." Filing No. 1, ¶ 104. In July 2024, however, a Northern District of Texas District Court rejected this very argument. *Becerra*, 2024 WL 3075865, at *14 (N.D. Tex. June 20, 2024) ("Simply put, **Identity** (Person A) + **Query** (Condition B) ≠ **IIHI** (Person A has Condition B).") (emphasis in original).

Plaintiffs' allegations also fail to meet the standard to invoke the crime-tort exception because Plaintiffs do not allege they ever disclosed their own health information to Bryan Health, that Bryan Health in turn disclosed that information to Meta, or that Plaintiffs were targeted with advertisements as a result of those actions. *J.C. v. Catholic Health Sys. Inc.*, 1:23-cv-00796(JLS)(JJM), 2024 WL 5136236, *13 (S.D.N.Y. Aug. 29, 2024) (internal citations omitted) (dismissing ECPA claim). Plaintiffs instead rely on abstract possibilities and examples. *See, e.g.*, Filing No. 1, ¶¶ 43–95 (discussing how the Pixel's operation on the Website can be "demonstrated").

*c. Plaintiffs' remaining allegations fail to meet the standard to invoke the crime-tort exception.*

Plaintiffs' additional allegations also fail to meet the standard required to invoke the crime-

tort exception. Plaintiffs allege "Defendant causes the transmission of Tracked Users' cookie identifiers, including IP address, browser fingerprints and device identifiers." *Id*. at ¶ 107. Other courts have already held this is not only not PHI but also is not the "content" of any communication required to state a wiretapping claim. *Hartley*, 2023 WL 7386060 at *2; *Kurowski III*, 2023 WL 8544084 at *2; *Kurowski* I, 2023 WL 2349606 at *5. Plaintiffs have also not established Bryan Health violated any law. The only tort Plaintiffs allege is violation of the common law invasion of privacy, which as shown above is not a cognizable claim under these facts.

*d. Plaintiffs allege Bryan Health's "primary motivation" was commercial, not criminal or tortious.*

Some other courts have found the crime-tort exception applies only where either the "primary motivation" or "determinative factor" in a party's interception was to commit a crime or tort. *See, e.g., In re Meta Pixel Healthcare Litig*., 647 F. Supp. 3d 778 (N.D. Cal. 2022); *In re DoubleClick Inc. Priv. Litig*., 154 F. Supp. 2d 497, 514–15 (S.D.N.Y. 2001). The crime-tort exception therefore focuses on whether "the purpose for the interception—its intended use—was criminal or tortious." *In re Meta Pixel Healthcare Litig*., 647 F. Supp. 3d at 796 (emphasis in original) (quoting *Sussman*, 186 F.3d at 1202). To survive a motion to dismiss under this standard, Plaintiffs must allege that either the "primary motivation or a determining factor in [Bryan Health's] actions has been to injure plaintiffs tortiously." *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1067 (N.D. Cal. 2021). Plaintiffs fail to make any such allegation here, instead alleging that Bryan Health disclosed the information to Meta "to further Defendant's own commercial interests." Filing No. 1, ¶ 18; *see also*, *id.* at ¶ 10 (alleging Bryan Health uses the Pixel "target and retarget their Tracked Users with advertisements, along with measuring how well those advertisements are working").

4. <u>The Complaint does not allege Bryan Health captured the "contents" of any communication.</u>

The ECPA prohibits in part a person or entity from intentionally divulging "the contents of any communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1104 (9th Cir. 2014) (citing 18 U.S.C. § 2511(3)(a)). It defines "content" as "any information concerning the substance, purport, or meaning of [a] communication." 18 U.S.C. § 2510(8). In the *In re Zynga* decision, the Ninth Circuit considered what information qualified as "content" in a case where the plaintiff alleged Facebook and Zynga violated the ECPA by disclosing HTTP referrer information to third parties. 750 F.3d at 1105. The Ninth Circuit held "that under ECPA, the term 'contents' refers to the intended message conveyed by the communication, and does not include record information regarding the characteristics of the message that is generated in the course of the communication." *Id.* at 1106. The court then rejected the plaintiff's allegations, finding:

> The referer header information that Facebook and Zynga transmitted to third parties included the user's Facebook ID and the address of the webpage from which the user's HTTP request to view another webpage was sent. This information does not meet the definition of "contents," because these pieces of information are not the "substance, purport, or meaning" of a communication.

*Id.* at 1107.

Courts have similarly recognized the capture of behavior—similar to "information Defendant could have obtained through a security camera at a brick-and-mortar store"—does not qualify as "content" of a communication. *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318 (S.D. Fla. 2021); *Jones*, 2024 WL 5205528, at *3 ("Just as a security camera at a physical store might record how customers react to a display of products, session-replay technology captures how a store's online customers react to digital displays, to the extent 'clicks' and 'hovers' might reveal those reactions.").

Although Plaintiffs allege Bryan Health's website is configured to transmit the "content"

of communications to Meta, the information they identify is instead "record information" and behavior. The ECPA claim should therefore be dismissed.

The word "content" appears only three times in Plaintiffs' complaint. Two of the allegations are specific to Facebook; not Bryan Health. Filing No. 1, ¶ 51 ("This Request URL includes a domain name and path, which identify the specific **content** being accessed on a website and its location within the website's structure") (emphasized); ¶ 72 ("Whenever a Tracked User performs any action on a webpage that includes Pixel, such as clicking buttons for registration, login, logout, or appointment creation on a Tracked User portal, the embedded Facebook code intercepts the **content** of the Tracked User's interaction to Facebook while the communication between the Tracked User and the medical provider is still ongoing.") (emphasized). Regardless, these allegations merely identify behavior and not the "content" of any communication. Plaintiffs' allegations that the Website can be configured to transmit when a user views a physician profile through the "find a doctor" function or views a location of a Bryan Health facility is similarly behavior. This is the type of information courts have found does not qualify as "content". *In re Zynga,* 750 F.3d at 1107. Plaintiffs cannot transform this record information and behavior into "content" simply by calling it so.

Plaintiffs also allege utilizing the Website's search function will reveal a user's PHI "along with the exact content of their communications with the Website." Filing No. 1, ¶ 106. Although the *In re Zynga* court acknowledged "[u]nder some circumstances, a user's request to a search engine for specific information could constitute a communication," 750 F.3d at 1108, Plaintiffs have not shown that such "circumstances" exist in this case. The complaint identifies only one example, where someone typed in a single word (diabetes) into the search box on the Website. Filing No. 1, ¶ 104. Plaintiffs do not explain how this is "content," however, and do not even allege

that any of the named Plaintiffs themselves performed that search.

5. <u>Plaintiffs ECPA claim should be dismissed because it was not brought within the statute of limitations.</u>

Subsection 2520(e) provides that "[a] civil action under this section may not be commenced later than two years after the date upon which the claimant first has a reasonable opportunity to discover the violation." 18 U.S.C. § 2520; *see also Bristow v. Clevenger*, 80 F. Supp. 2d 421, 427 (M.D. Pa. 2000) (dismissing ECPA claim brought beyond two-year time period).

"[I]f the face of the complaint does show that the cause of action is time barred and the plaintiff does not allege facts to avoid the bar of the statute of limitations, dismissal is proper." *Bonness v. Armitage*, 305 Neb. 747, 755, 942 N.W.2d 238, 245 (2020) (citing *Chafin v. Wisconsin Province Society of Jesus*, 301 Neb. 94, 917 N.W.2d 821 (2018)). Plaintiffs filed this complaint on November 22, 2024. Filing No. 1. Plaintiff Bussard alleges he began visiting the Website "[i]n or around 2012." *Id.*, at ¶ 25. Plaintiff Gibson alleges he used the website "from 2022 . . . ." *Id.*, at ¶ 26. Thus, Plaintiffs' claims are barred by the two year statute of limitations.

To avoid dismissal, Plaintiffs only offer conclusory allegations that the statute of limitations was tolled. Filing No. 1, ¶¶ 169–174. Although Plaintiffs allege "[t]he earliest Plaintiffs and Class Members could have known about Defendant's conduct was in connection with their investigation and the work done on their behalf in preparation of filing of this Complaint," Plaintiffs do not state when that investigation and/or work began.

**C. Count IV The Nebraska Wiretap Act (Neb. Rev. Stat. § 86-297)**

Plaintiffs' Nebraska Wiretapping claim should be dismissed for the same reasons that the ECPA claim should be dismissed as explained above. "The Nebraska Wiretap Act is patterned after its federal counterpart, and so the Court looks to federal law in interpreting its provisions." *Williams v. Raynor Rensch & Pfieffer*, No. 8:11-CV-446, 2015 WL 2127095, at *13 (D. Neb. May

6, 2015) (citing *State v. Strohl*, 255 Neb. 918, 587 N.W.2d 675, 681 (Neb.1999)), *aff'd sub nom*, 669 F. App'x 340 (8th Cir. 2016). The Nebraska Act, like the ECPA, is a one-party consent statute with the same "crime-tort" exception required to overcome the party exception. Neb. Rev. Stat. Ann. § 86-290(2)(b). The Nebraska Act also has a two-year statute of limitations period. *Id.* at § 86-297. Plaintiffs' claim should be dismissed for the same reasons discussed above.

**D. Count III Breach of Implied Contract**

Under Nebraska law:

> An implied contract arises where the intention of the parties is not expressed in writing but where the circumstances are such as to show a mutual intent to contract. . . . The determination of the parties' intent to make a contract is to be gathered from objective manifestations—the conduct of the parties, language used, or acts done by them, or other pertinent circumstances surrounding the transaction."

*Linscott v. Shasteen*, 288 Neb. 276, 281–82 (2014).

Plaintiffs allege they "entered into an implied contract with Defendant when they provided their PHI to Defendant in exchange for services, pursuant to which Defendant agreed to safeguard their PHI and not disclose such information without consent." Filing No. 1, ¶ 217. Plaintiffs do not identify what "services" they received in exchange for providing their PHI. Plaintiffs nevertheless allege Bryan Health breached the agreement by disclosing their PHI to Facebook. *Id.*, at ¶ 220.

Other courts have rejected nearly identical allegations. *Nienaber*, 733 F. Supp. 3d at 1090. In *Nienaber*, the plaintiff alleged "she and the other putative class members 'provided their user data to Defendant in exchange for services, they entered into an implied contract pursuant to which Defendant agreed to safeguard and not disclose their Private Information without consent.'" *Id.* at 1091. The court found "these facts are insufficient to allege the existence of an implied contract." *Id.* Plaintiffs here do not allege they paid any monies to Bryan Health. They instead allege only that they provided their PHI on their own initiative. Filing No. 1, ¶ 217. This is insufficient to state a claim for implied contract. *Nienaber*, 733 F. Supp. 3d at 1093 (dismissing implied breach of

contract claim).

Even if Plaintiffs could have alleged the formation of an implied contract, the Court should dismiss this claim because Plaintiffs cannot allege damages. Where the claimed injury is based only on the claimed inherent value of the personal data, courts find no damage sufficient to maintain an implied breach of contract claim can exist. *Nienaber*, 773 F. Supp. 3d at 1092 (collecting cases); *see also Piedmont Healthcare, Inc.*, 2024 WL 3972984, at *4 (dismissing claim for breach of implied contract upon finding plaintiffs failed to plead actionable damages or unjust enrichment of the defendant).

Plaintiffs vaguely allege they "have been injured as alleged herein". Filing No. 1, ¶ 221. Because Plaintiffs do not allege any actionable damage, their breach of implied contract must be dismissed. Neither can Plaintiffs' allegation that had they "known that their private PHI would be disclosed to Facebook, Plaintiffs and Nationwide Class Members would not have used Facebook's services or would have been [sic] substantially less for those services," *id.*, rescue their damages claim because that allegation concerns Facebook, not Bryan Health. Similarly, Plaintiffs allege elsewhere in the complaint that they were harmed when "Defendant illegally printed out sensitive information of Plaintiffs and Class members and disseminated it where it could be easily spotted in disregard of their duty to protect this information." *Id.*, at ¶ 180. Nowhere else, however, do Plaintiffs allege Bryan Health "printed out" any information, much less where it could be easily spotted. This again seems to refer to what harm someone other than Bryan Health allegedly caused Plaintiffs[6].

---

[6] This, like several other paragraphs of Plaintiffs' complaint, seem to be remnants of complaints against parties other than Bryan Health. *See, e.g.*, Filing No. 1, ¶ 128 (using the name of a different healthcare company, Meijer); *id.* at ¶ 180 (alleging Bryan Health "printed" sensitive information and "disseminated it where it could be easily spotted")

Because Plaintiffs cannot allege the formation of any implied contract or damages they suffered if any such contract was breached, this claim must be dismissed.

## V. CONCLUSION

For the foregoing reasons, Defendant Bryan Health respectfully submits the claims of the Complaint be dismissed. Because the issues identified above cannot be resolved via amendment, Bryan Health respectfully requests the complaint be dismissed with prejudice.

Dated: January 24, 2025

Respectfully submitted,

By: */s/ Dustin L Taylor*
Kamron T.M. Hasan (#25494)
HUSCH BLACKWELL LLP
14606 Branch Street
Suite 200
Omaha, NE 68154
Telephone: (402) 964-5176
Facsimile: (402) 964-5050
kamron.hasan@huschblackwell.com

Dustin L. Taylor (#54463 CO) *
HUSCH BLACKWELL LLP
1801 Wewatta Street, Suite 1000
Denver, CO 80202
Telephone: (303) 749-7200
Facsimile: (303) 749-7272
Dustin.Taylor@huschblackwell.com

* *Pro Hac Vice*

***Attorneys for Defendant Bryan Health.***

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies NECivR 7.1(d)(1)(A) and (d)(3) and further certify that the word count function was applied to include all text, including the caption, heading, footnotes, and quotations. This document was prepared using Microsoft Word for Office 365 and contains 8,602 words, which is within the 13,000-word limit.

*/s/ Dustin L. Taylor*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with The District of Nebraska's Local Rules and further state no generative artificial intelligence program was used in drafting the document.

*/s/ Dustin L. Taylor*

**CERTIFICATE OF SERVICE**

I hereby certify that today, this 24th day of January 2025, I caused the foregoing document to be filed electronically with the Clerk of Court and therefore served upon all counsel of record.

*/s/ Dustin L. Taylor*