**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

ROBERT BUSSARD and DANIEL GIBSON, on Behalf of Themselves and All Others Similarly Situated,

Plaintiffs,

v.

BRYAN HEALTH

Defendant.

**Case No.: 4:24-cv-03214-SMB-MDN**

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT BRYAN HEALTH'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

# TABLE OF CONTENTS


INTRODUCTION ..... 1

STATEMENT OF FACTS ..... 2

ARGUMENT ..... 5

A. Plaintiffs' Intrusion Upon Seclusion Claims Were Adequately Pled ..... 5

B. Plaintiffs State a Claim for Relief under the Wiretap Act. ..... 8

1. Bryan Health did not seek, let alone provide, consent to Meta's interceptions. ..... 9

2. The crime-tort exception applies, precluding Defendant from claiming any purported defense under the party exception. ..... 11

a. Plaintiffs allege disclosure of personal health information sufficient to constitute a HIPAA violation. ..... 12

b. Bryan Health's use of the intercepted data for monetary gain does not preclude the application of the crime-tort exception. ..... 15

3. Bryan Health procured the interception of the contents of Plaintiffs' communications. ..... 17

a. "Interception" ..... 18

b. "Contents" ..... 19

4. The statute of limitations was tolled because Plaintiffs had no reasonable opportunity to discover the violation. ..... 21

C. Plaintiffs State a Claim for Relief under the Nebraska Wiretap Act (Neb. Rev. Stat. § 86-297) ..... 22

D. Plaintiffs Adequately Allege a Breach of Implied Contract ..... 22

CONCLUSION ..... 24

## TABLE OF AUTHORITIES

**Cases**


*AHA v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. June 20, 2024) .......... 14, 15

*Baysal v. Midvale Indem. Co.*,
78 F.4th 976 (7th Cir. 2023) .......... 6

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. Mar. 12, 2021) .......... 10, 11, 22

*Calhoun v. Google, LLC*,
113 F.4th 1141 (9th Cir. 2024) .......... 6

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) .......... 12

*Castillo v. Costco Wholesale Corporation*,
No. 2:23-cv-01548, 2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) .......... 12, 16, 20

*Cooper v. Mount Sinai Health Sys., Inc.*,
742 F.Supp.3d 369 (S.D.N.Y. July 30, 2024) .......... 16, 20

*Cousin v. Sharp Healthcare*,
2023 WL 8007350 (S.D. Cal. Nov. 17, 2023) .......... 19

*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. Nov. 17, 2023) .......... 6, 15

*D'Angelo v. Penny Opco, LLC*,
Case No. 23-cv-0981-BAS-DDL, 2023 U.S. Dist. LEXIS 191054 (S.D. Cal. Oct. 24, 2023) 18

*Doe v. High-Tech Institute, Inc.*,
972 P.2d 1060 (Colo. App. 1998) .......... 6

*Doe v. Redeemer Health*,
Case No. 230501236, 2024 Phila. Ct. Com. Pl. LEXIS 17 (Sept. 16, 2024) .......... 6

*Doe v. Regents of the Univ. of Cal.*,
672 F. Supp. 3d 813 (N.D. Cal. 2023) .......... 6

*Esparza v. Gen. Digit. Inc.*,
Case No. CV 23-8223-KK-AGRx, 2024 U.S. Dist. LEXIS 28132 (C.D. Cal. Jan. 16, 2024). 18

*Esparza v. UAG Escondido A1 Inc.*,
2024 U.S. Dist. LEXIS 24429 (S.D. Cal. Feb. 12, 2024) .......... 18

*Fenerjian v. Nongshim Co., Ltd*,
72 F. Supp. 3d 1058 (N.D. Cal. 2014) .......... 21

*Gaige v. Exer Holding Co., LLC*,
2:24-cv-06099-AH-(AJRx), 2025 U.S. Dist. LEXIS 17146 (C.D. Cal. Jan. 30, 2025) ..........21

*Gay v. Garnet Health*,
No. 23-cv-06950 (NSR), 2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024)..........................16, 17

*Gershzon v. Meta Platforms, Inc.*,
Case No. 23-cv-00083-SI, 2023 U.S. Dist. LEXIS 147448 (N.D. Cal. Aug. 22, 2023) ..........22

*Heerde v. Learfield Commc'ns, LLC*,
No. 2:23-CV-04493-FLA (MAAX), 2024 WL 3573874 (C.D. Cal. July 19, 2024)................10

*Heintze v. Wells Fargo Bank, N.A.*,
No. CV1501238MMMMANX, 2015 WL 12696455 (C.D. Cal. June 19, 2015).....................22

*In re Grp. Health Plan Litig.*,
2023 WL 8850243 (D. Minn. Dec. 21, 2023) ..........................................................19

*In re Meta Pixel Healthcare Litig.*,
647 F.Supp.3d 778 (N.D. Cal. 2022).................................................................6, 19, 20

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ..........................................................................8

*In re Pharmatrak, Inc.*,
329 F.3d 9 (1st Cir. 2003)...........................................................................10, 11

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014) ......................................................................19, 20

*James v. The Walt Disney Co.*,
701 F. Supp. 3d 942 (N.D. Cal. 2023)...............................................................19

*Jarrell v. Adena Health Sys.*,
Case No. 2:24-cv-00282, 2025 U.S. Dist. LEXIS 6169 (S.D. Oh. Jan. 13, 2025)..................16

*Johannson v. Wachovia Mort. FSB*,
2011 WL 3443952 (N.D. Cal. Aug. 5, 2011) ........................................................21

*Kaiser v. Millard Lumber, Inc.*,
255 Neb. 943 (1999)...................................................................................23

*Kaiser v. Western R/C Flyers, Inc.*,
239 Neb. 624 (Neb. 1991) ...........................................................................8

*Kane v. University of Rochester*,
2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) .................................................13, 16, 17

*Kane v. University of Rochester*,
No. 23-cv-6027-FPG, 2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) .................................12

*Kirsten v. California Pizza Kitchen, Inc.,*
No. 2:21-CV-09578, 2022 WL 16894503 (C.D. Cal. July 29, 2022) ....................................23

*Kurowski v. Rush Sys. for* Health,
No. 22 C 5380, 2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ..........................................12, 20

*Kurowski v. Rush Sys. for Health*,
No. 22-c-5380, 2024 WL 3455020 (N.D. Ill. July 18, 2024) ...........................................16, 17

*Linscott v. Shasteen,*
847 N.W.2d 283 (Neb. 2014) ...........................................................................................22

*Matera v. Google Inc.*,
Case No. 15-CV-04062-LHK, 2016 WL 5339806 (N.D. Cal. Sept. 23, 2016) .......................10

*McCulley v. Banner Health*,
No. CV-23-00985-PHX-SPL, 2024 U.S. Dist. LEXIS 85232 (D. Ariz. May 10, 2024) .........20

*Mekhail v. N. Mem'l Health Care*,
2024 WL 1332260 (D. Minn. Mar. 28, 2024) ..................................................................17, 20

*Mekhail v. N. Mem'l Health Care*,
726 F.Supp.3d 916 (D. Minn. 2024)....................................................................................12

*Nienaber v. Overlake Hosp. Med. Ctr.*,
No. 2:34-cv-01159-TL, 2025 U.S. Dist. LEXIS 38654 (W.D. Wash. Mar. 4, 2025) ..............14

*Nienaber v. Overlake Hospital Medical Center*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) ......................................................................13, 14

Okash v. Essentia Health,
No. 23-482-JRT/LIB, 2024 WL 1285779 (D. Minn. Mar. 26, 2024) ...............................15, 16

*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. May 9, 2024)................................................................12, 17

*R.C. v. Walgreen, Co.*, 733 F. Supp. 3d 876, 893 ...............................................................15

*Rita Ade et al. v. Viki, Inc.*,
No. 23-cv-02161-RFL, 2024 U.S. Dist. LEXIS 79467 (N.D. Cal. Mar. 28, 2024) .................21

*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017)................................................................................13

*St. Aubin v. Carbon Health Techs., Inc.*,
Case No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024)...........13

*Steve Jackson Games, Inc. v. U.S. Secret Serv.*,
36 F.3d 457 (5th Cir. 1994) ...............................................................................................18

*Sussman v. ABC*,
186 F.3d 1200 (9th Cir. 1999) ....................................................................................12

*U.S. v. Turk*,
526 F.2d 654 (5th Cir.), *cert. denied*, 429 U.S. 823 (1976) ....................................................18

*United States v. Szymuszkiewicz*,
622 F.3d 701 (7th Cir. 2010) .....................................................................................19

*Weisenberger v. Ameritas Mut. Holding Co.*,
597 F.Supp.3d 1351 (D. Neb. April 7, 2022) ..........................................................23

*Wilkinson v. Methodist, Richard Young Hosp.*,
259 Neb. 745 (2000) .....................................................................................................7

*Wilkinson v. Methodist, Richard Young Hosp.*,
612 N.W.2d 213 (Neb. 2000) ..........................................................................................7

*Williams v. Raynor Rensch & Pfeiffer*,
No. 8:11-CV-446, 2015 WL 2127095 (D. Neb. May 6, 2015) ....................................22

**Statutes**

18 U.S.C. § 2511(2)(c)-(d)..........................................................................................9
18 U.S.C. §§ 2510 *et seq.*............................................................................................1
42 U.S.C. §1320d-6(b)(3) ...........................................................................................16
Neb. Rev. Stat. § 86-297 ........................................................................................1, 22
Neb. Rev. Stat. Ann. § 20-203 .......................................................................................5

**Treatises**

RESTATEMENT (SECOND) OF TORTS § 652B at 378 (1977) ..............................................8
RESTATEMENT (SECOND) OF TORTS § 892A(2)(b) (1979) ..............................................6

Plaintiffs Robert Bussard and Daniel Gibson (collectively "Plaintiffs") respectfully submit this memorandum of law in opposition to Defendant Bryan Health's Motion to Dismiss Plaintiffs' Complaint.

## INTRODUCTION

This class action is brought by Plaintiffs Robert Bussard and Daniel Gibson ("Plaintiffs") for intruding upon their seclusion, violations of the Federal Wiretap Act, 18 U.S.C. §§ 2510 *et seq.*, the Nebraska Wiretap Act, Neb. Rev. Stat. § 86-297, and for breach of implied contract. *See* Compl. ¶ 188-95, 196-215, 216-22, 223-46. Defendant Bryan Health ("Defendant" or "Bryan Health") operates https://www.bryanhealth.com/ (collectively with all subdomains, the "Website"), which provides users the ability to manage their healthcare, conduct searches related to their health conditions, and search for healthcare locations and doctors.

Plaintiffs and other patients of Bryan Health who used the Website (the "Tracked Users") had a reasonable expectation that the personal health information (the "Sensitive Information") they communicated to Defendant through its Website would be kept safe from unauthorized disclosure. In violation of that trust, and in contravention of its own privacy policy, Defendant procured Meta to intercept Tracked Users' Sensitive Information to Facebook without authorization or consent for the purpose of furthering Defendant's and Meta Platform Inc.'s ("Meta" or "Facebook") commercial interests.

Bryan Health installed a tracking tool, developed by Meta, called the Facebook Pixel (the "Pixel")[1] on its Website. The Pixel transmits Tracked Users' searches on the Website related to health conditions, suspected health conditions, locations of care facilities, or doctors to treat patients' health conditions to Facebook. The Pixel transmits this information simultaneously with

[1]The Pixel is a small piece of computer code that collected and disclosed Sensitive Information about the users of Bryan Health's Website – including the actions that they took on the Website – to Facebook.

Tracked Users' activity on the Website, and packaged with the Tracked Users' "Facebook IDs," unique identifiers which anyone can use to look up the Tracked Users' Facebook profiles containing detailed, identifiable information about the Tracked Users.

Bryan Health purposefully implemented and utilized the Pixel to allow Meta to intercept and read Tracked Users' communications, in the form of Sensitive Information, for Bryan Health's and Meta's benefit. Plaintiffs did not know of, or consent to, the exposure of their legally protected communications with Defendant to Facebook.

Plaintiffs sufficiently state claims for violations of the Federal Wiretap Act, the Nebraska Wiretap Act, intrusion upon seclusion, and breach of implied contract. Defendant's arguments to the contrary are without merit. Accordingly, the Court should deny Defendant's motion to dismiss ("MTD") in its entirety.

## STATEMENT OF FACTS

Bryan Health added the Pixel to its Website. To do so, Bryan Health first agreed to Meta's Business Tools Terms and then used a multi-faceted method to add the Pixel code to each webpage of the Website. *See* Compl. ¶¶ 7, 9.

Websites operate with a straightforward process: (1) a user tries to visit a webpage at a specific "address" by sending a "HTTP Request"[2] to the server located at that address (*see id.* ¶¶ 48, 49); (2) the server hosting the website then authorizes the user's access, sending an authorization message (the "response") and sending the code associated with the webpage to the user (*see id.* ¶ 49); and (3) the user's browser finally assembles the code into a functional webpage (*see id.* ¶ 50). The Pixel is transferred to a user's browser when the server sends the website code

[2] HTTP Requests can be made using different request methods. Meta's tracking tools, like the Pixel, tend to use GET requests (*see, e.g.,* ¶ 99, Figure 3; ¶ 101, Figures 4-7), and POST requests. *See* Surya Mattu, et al., *How We Built a Meta Pixel Inspector*, THE MARKUP (Apr. 28, 2022), https://themarkup.org/show-your-work/2022/04/28/how-we-built-a-meta-pixel-inspector (last visited March 17, 2025).

to the user. *See id.* ¶¶ 62-76, 90. When the user's browser assembles the webpage code (*see id.* ¶ 50), the Pixel is activated and automatically begins monitoring user activity. *See id.* ¶ 82. User actions are monitored through different "events," each of which track different types of activity. *See id.* ¶¶ 88-90.

As applied to the Website, the user activity tracked includes (1) searches for specific symptoms, illnesses, etc., (2) searching for and filtering through doctors by specialty, and (3) looking for locations of care. *See id.* ¶¶ 89, 105. Bryan Health chose the specific activities monitored by the Pixel. *See id.* ¶¶ 77-84. When a user triggered a monitored event, such as searching for a doctor by specialty or viewing a doctor's profile (*see id.* ¶¶ 95-96), the following instantly occurred: the browser generated a new request for the server, either to load a new webpage or request additional materials pertaining to the user activity (for example, loading a new webpage with search results); the Pixel activated and information relevant to the action was captured (*see, e.g.*, *id.* ¶¶ 88-90), bundled with a user's c_user cookie[3] (*see, e.g., id.* ¶¶ 91-96), and, once the information was bundled, sent to Meta (*id.* ¶ 96). This process of monitoring, duplicating, and transmitting users' communications occurred within users' browsers at the moment communications were sent to the Website's server. *See id.* ¶¶ 65, 106.

Bryan Health agreed to Meta's Business Tools Terms as a condition of its use of the Pixel. *Id.* ¶ 130. The Business Tools Terms make clear to website operators - including Bryan Health – that the Pixel collects user activity information and personal information, matching that information to a user's Facebook profile, and using the resulting profile to target advertising to those users. *Id.* ¶¶ 128-32. Recognizing that its Pixel could be used to violate privacy rights, Meta explicitly prohibits the use of its tracking tools, including the Pixel, for the purpose of collecting

[3] The c_user cookie contains users' unencrypted Facebook User ID.

health information, and additionally requires that websites using the Pixel have a lawful basis[4] for collecting any information sent to Meta. *Id.* ¶ 133.

Bryan Health programmed the Pixel to capture information related to (1) searches for specific symptoms, illnesses, etc., (2) searching for and filtering through doctors by specialty, and (3) looking for specific locations to obtain medical care. *See id.* ¶ 105. Plaintiffs used the Website to search for information related to their health conditions or suspected health conditions, obtain information about doctors for treatment purposes, and find Bryan hospital locations for treatments purposes. *See id.* ¶¶ 25, 26. This tracking of users' Sensitive Information could not have occurred unless Bryan Health added the Pixel to its Website to track Plaintiffs' Sensitive Information.

Once Meta receives the Facebook Pixel transmissions, it processes the data to allow both Bryan Health and Meta to better target Tracked Users with advertising based on the Sensitive Information users provided to the Website. *Id.* ¶¶ 19, 20, 117, 124.

Bryan Health did not alert Tracked Users, including Plaintiffs, to its use of the Pixel, or that its use of the Pixel would result in Tracked Users' Sensitive Information being disclosed. Indeed, Bryan Health's Privacy Policy emphasizes the importance of keeping health information safe from unauthorized disclosure. *Id.* ¶ 3.

---

[4] *Meta Business Tools Terms*, Section 1(e), FACEBOOK (Apr. 25, 2023), https://www.facebook.com/legal/businesstech?paipv=0&eav=AfY375fgb725ZjQrZEqZyhoJsO63s7_tFmEPfgnFpe%20w1xw5Wldq7ONw04KTB0G0o-i4&_rdr (. *Meta Business Tools Terms*, Section 1(e), FACEBOOK (Apr. 25, 2023), https://www.facebook.com/legal/businesstech?paipv=0&eav=AfY375fgb725ZjQrZEqZyhoJsO63s7_tFmEPfgnFpe%20w1xw5Wldq7ONw04KTB0G0o-i4&_rdr (last visited March 17, 2025)https://www.facebook.com/legal/businesstech?paipv=0&eav=AfY375fgb725ZjQrZEqZyhoJsO63s7_tFmEPfgnFpe%20w1xw5Wldq7ONw04KTB0G0o-i4&_rdr.

## ARGUMENT

### A. Plaintiffs' Intrusion Upon Seclusion Claims Were Adequately Pled

Defendant violated Plaintiffs' privacy through its placement of the Pixel on its Website, which allowed Meta to covertly track and share Tracked Users' activity, including their personal or sensitive searches. By implementing the Pixel on the Website, Defendant placed the Pixel on Plaintiffs' computers, which compelled Plaintiffs' browsers to automatically share Plaintiffs' Sensitive Information with Facebook.

Nebraska's codified tort of intrusion upon seclusion provides, "any person, firm, or corporation that trespasses or intrudes upon any natural person in his or her place of solitude or seclusion, if the intrusion would be highly offensive to a reasonable person, shall be liable for invasion of privacy." Neb. Rev. Stat. Ann. § 20-203. Bryan Health intruded upon Plaintiffs' seclusion by (1) intercepting Plaintiffs' activity on the Website, (2) revealing Plaintiffs' health information, (3) combining that health information with cookies on Plaintiffs' devices (which were not given voluntarily to Defendant), to (4) link Plaintiffs to the intercepted health information, and (5) routing that combined Sensitive Information to Meta – *all at once*. As the Sensitive Information at issue is protected under the Health Insurance Portability and Accountability Act ("HIPAA"), Plaintiffs had a reasonable expectation that a healthcare provider would keep Sensitive Information confidential. Exposing Plaintiffs' Sensitive Information to Meta resulted directly from Defendant's addition of the Pixel to the Website.

Defendant argues that it did not intrude upon Plaintiffs in their place of seclusion because Plaintiffs willingly provided information to Bryan Health. MTD at 8. Defendant further argues that there was no intrusion because Bryan Health cannot intrude upon its own records.[5] MTD at

[5] This argument is further addressed in Section B(3).

9. Both of these arguments fail.

To start, a reasonable expectation of privacy typically exists where a plaintiff is transmitting health related information to a medical care provider. *See Doe v. High-Tech Institute, Inc.,* 972 P.2d 1060, 1068 (Colo. App. 1998) ("[T]here is a . . . recognized privacy interest in . . . one's health"); *Baysal v. Midvale Indem. Co.*, 78 F.4th 976, 981 (7th Cir. 2023) (noting the private nature of medical details); *In re Meta Pixel Healthcare Litig.*, 647 F.Supp.3d 778, 800 (N.D. Cal. 2022) (finding similar medically-related information supported a reasonable expectation of privacy); *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 973 (S.D. Cal. Nov. 17, 2023) (finding the use of the Pixel to disclose a patient's search for a doctor by filtering for specialty "survives dismissal by demonstrating that her interactions plausibly relate to the provision of health care"); *Doe v. Regents of the Univ. of Cal.*, 672 F. Supp. 3d 813, 820 (N.D. Cal. 2023) ("Personal medical information is understood to be among the most sensitive information . . . ."). Merely claiming that Plaintiffs provided the information at issue "willingly" to Defendant does not inoculate Defendant (MTD at 8); patients voluntarily disclosing information to a medical care provider "for the sake of providing medical treatment" does not mean that patients "disclose[d] it for sale to Google and Facebook." *Doe v. Redeemer Health*, Case No. 230501236, 2024 Phila. Ct. Com. Pl. LEXIS 17, at *1 n.2 (Sept. 16, 2024); *see Calhoun v. Google, LLC*, 113 F.4th 1141, 1147 (9th Cir. 2024) (noting effective consent to challenged conduct "must be . . . to the particular conduct, or substantially the same conduct") (quoting RESTATEMENT (SECOND) OF TORTS § 892A(2)(b) (1979)). Thus, that Plaintiffs willingly sent health information to Defendant does not determine the outcome of Plaintiffs' intrusion upon seclusion claim. As the Court in *Redeemer* highlights, the intended purpose for an intercepted communication must also be examined. Here, Plaintiffs communicated this information for the purpose of obtaining medical care (*see* Compl. ¶¶ 25, 26); Defendant has not said otherwise. Indeed, Plaintiffs communicated their health-related

information to Defendant to search for information related to the location of centers, information about illnesses, and the specialties of doctors, to treat Plaintiffs' specific health conditions. Compl. ¶¶ 25, 26.

Even if voluntarily submitting communications was a determinative factor, Bryan Health's argument still fails. Defendant can claim that the disclosure of the health information contained in the URLs was voluntary, but PHI is the combination of health information ***with identifiable information***. Plaintiffs alleged that patients' identifiable information, in the form of cookies containing their unique Facebook IDs ("FIDs"), was not voluntarily provided to Bryan Health by Plaintiffs, but rather collected by the Pixel on their browsers and sent directly to Meta. *See id.* ¶¶ 7-10, 13, 14, 25, 26. Defendant does not, and cannot, claim that it was provided access to Plaintiffs' FIDs voluntarily by Plaintiffs before the FIDs were collected by and transmitted to Meta.

Further, Defendant argues that once the Tracked Users' information was shared with Defendant, it became part of Bryan Health's own records and Defendant cannot intrude upon its own records. MTD at 9. Defendant's reliance upon *Wilkinson v. Methodist, Richard Young Hosp.,* 259 Neb. 745 (2000) is misled. *Wilkinson* is distinguishable from this case because in *Wilkinson,* the plaintiff refused to provide any information to the defendant when the defendant contacted plaintiff about his daughter. *Wilkinson v. Methodist, Richard Young Hosp.,* 612 N.W.2d 213, 215 (Neb. 2000). Despite the plaintiff's refusal to provide information about his daughter within that call, the defendant reviewed its own records to find the insurance information provided from a previous hospital visit by plaintiff. *Wilkinson, 259 Neb. 745,* at 747. Here, Defendant utilized the Pixel to enable Meta's capture of Plaintiffs' Sensitive Information to disclose such information to third party Meta. Contrary to *Wilkinson,* where the defendant reviewed its own records for

insurance billing purposes, Bryan Health utilized the Pixel to have the Sensitive Information intercepted before Bryan Health had received the Sensitive Information.

Finally, Defendant argues that even if an intrusion existed, it was not highly offensive. MTD at 9. Nebraska courts look to the RESTATEMENT (SECOND) OF TORTS § 652B at 378 (1977) for guidance on the types of intrusions that qualify for invasion of privacy claims, which includes examples of "wiretapping by a private detective" and "obtaining access to a person's bank records pursuant to a forged court order . . . ." *Kaiser v. Western R/C Flyers, Inc.,* 239 Neb. 624, 631-32 (Neb. 1991). Here, the interception of search terms, doctor information (including specialty filtering), and locations of care facilities align with the wiretapping conducted by a private detective example highlighted by the *Kaiser* court, and the compelling of Plaintiffs' browsers to send identifying cookies to Meta aligns with forcing a bank to turn over its records without actual authority to obtain such records.

Plaintiffs established that the information at issue here involved Sensitive Information and third parties intercepting that Sensitive Information for marketing purposes through the Pixel. The interception of Sensitive Information was an intrusion that is highly offensive.

**B. Plaintiffs State a Claim for Relief under the Wiretap Act.**

A violation of the Federal Wiretap Act, as amended by the Electronic Communications Privacy Act ("ECPA"), occurs when a defendant has "(1) intentionally; (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept; (3) the contents of; (4) an electronic communication; (5) using a device." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 274 (3d Cir. 2016).

Plaintiffs allege that their communications to Bryan Health were "intercepted" by joint action between Bryan Health and Meta, in that: (1) Bryan Health intentionally added the Pixel to its Website; and (2) Meta designed the Pixel to intercept the contents of Plaintiffs' electronic

communications to Bryan Health via Plaintiffs' computer browser. Through this interception, Meta received and processed the intercepted information to improve advertising efforts by both Bryan Health and Meta. *See* Compl. ¶¶ 5, 11, 19, 63, 64, 117, 124. Defendant argues that Plaintiffs' ECPA claim fails because (1) Bryan Health did not procure Meta to intercept any communication; (2) Bryan Health did not itself intercept any communication because it is a party to the communication; (3) Bryan Health did not commit a crime or tort that would invalidate the party exception; (4) the Complaint does not allege Bryan Health intercepted or shared the "contents" of any communication; and (5) Plaintiffs' claims are barred by the statute of limitations. See MTD at 10. All of these arguments fail.

***1. Bryan Health did not seek, let alone provide, consent to Meta's interceptions.***

There are two exceptions to liability for interceptions under the ECPA: (1) where a party to a communication directly intercepts the communication (the "party exception"); and (2) where a party to a communication provides prior consent to a third party's interception of the communication (the "consent exception"). 18 U.S.C. § 2511(2)(c)-(d). Neither the party exception or consent exception are applicable where the communication is intercepted "for the purpose of committing any criminal or tortious act . . . ." 18 U.S.C. § 2511(2)(d).

Bryan Health argues that its status as a party to the communications at issue vitiates its liability. *See* MTD at 11-12. This misstates the operation of the party exception. Bryan Health's mere status as a party to the conversation only exempts its conduct *where Bryan Health is the intercepting party*. Plaintiffs allege that Bryan Health installed the Pixel on its Website *to allow Meta* to intercept Plaintiffs' communications. *See* Compl. ¶¶ 15, 23, 107. While Defendant benefitted from the intercepted information as part of their business operations and strategy, it was Meta that performed the actual interception. *See, e.g., id.* ¶¶ 15, 20, 23, 58, 107. Simply

stated, because Defendant is not the intercepting party, and Meta is not a party to the conversation, the party exception does not apply here.

Defendant blanketly (and incorrectly) states that "because Bryan Health—a party to the communication—consented to Meta's receipt of the message, there is no violation of the ECPA." MTD at 12. However, there is nothing in the record before this Court to show that Bryan Health provided consent for Meta's interceptions. Absent that showing by Defendant, the exception cannot apply because "for the consent exception under the [Wiretap Act] in civil cases, . . . it makes more sense to place the burden of showing consent on the party seeking the benefit of the exception . . . .'" *Heerde v. Learfield Commc'ns, LLC*, No. 2:23-CV-04493-FLA (MAAX), 2024 WL 3573874, at *8 (C.D. Cal. July 19, 2024) (quoting *In re Pharmatrak, Inc.*, 329 F.3d 9, 19 (1st Cir. 2003)). "'[A]s the party seeking the benefit of the exception,' it is [defendant]'s burden to prove consent." *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1063 (N.D. Cal. Mar. 12, 2021) (quoting *Matera v. Google Inc.*, Case No. 15-CV-04062-LHK, 2016 WL 5339806, at *17 (N.D. Cal. Sept. 23, 2016)). Bryan Health has failed to produce any evidence to support its claim that it provided effective consent to Meta's interceptions of Plaintiffs' PII, nor could it.

Assuming *arguendo* that Bryan Health gave implicit consent for Meta's interceptions by using the Pixel, Meta's Terms governing the Pixel explicitly prohibits the interception of Plaintiffs' Sensitive Information. Meta did not offer Defendant carte blanche data interception services. To the contrary, Meta *conditions* the use of its Pixel on agreement to the Meta Business Tools Terms, which requires Pixel users, like Bryan Health, to explicitly limit the use of the Pixel. The Terms specifically prohibit the use of the Pixel to intercept sensitive or legally protected information, including health information. Compl. ¶¶ 128-33. Thus, any consent provided by Bryan Health would be constrained by its agreement to the Meta's Business Tools Terms, which explicitly forbids Bryan Health's use of the Pixel to intercept Plaintiffs' Sensitive Information.

*See In re Pharmatrak,* at 20-21 (holding consent could not exist where use of a tracking tool to gather personally identifiable information was "explicitly conditioned . . . on the fact that it would *not* collect such information" because "[i]t would undercut efforts by one party to a contract to require that the privacy interests of those who electronically communicate with it be protected by the other party to the contract").

To the extent Bryan Health can later demonstrate that they provided consent to Meta's interceptions of communications to which it was party to pursuant to 18 U.S.C. § 2511(2)(d), Bryan Health's claim of consent still fails. A party invoking the consent exception must show that such consent was "actual," where "actual consent" requires disclosures that "'explicitly notify' users of the practice at issue." *Brown*, 525 F. Supp. 3d at 1063. Bryan Health cannot. The interception of Plaintiffs' communications was surreptitious; Plaintiffs had no knowledge that their Sensitive Information was being intercepted by Facebook for Facebook's and Defendant's benefit, including improved marketing. *See, e.g.,* Compl. ¶¶ 3, 6, 9, 106, 109-14, 125-27, 170. In fact, Defendant's Notice of Privacy Practices expressly states that Bryan Health "will not use or disclose [Tracked Users'] health information for marketing purposes without [their] authorization." *Id.* ¶ 3.

***2. The crime-tort exception applies, precluding Defendant from claiming any purported defense under the party exception.***

Irrespective of whether Bryan Health was a party to the communications at issue and Bryan Health consented to Meta's interceptions (which it did not), the crime-tort exception applies to Defendant's conduct here. The exceptions under §2511(2)(d) do not apply where, as alleged here, the "communication is intercepted for the purpose of committing any tortious or criminal act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d).

The crime-tort exception focuses on whether the purpose for the interception was criminal or tortious. *Caro v. Weintraub*, 618 F.3d 94, 99-100 (2d Cir. 2010). The existence of a lawful purpose does not counteract an interception that was also made for a tortious or unlawful purpose. *Sussman v. ABC,* 186 F.3d 1200, 1202 (9th Cir. 1999). Plaintiffs allege that Bryan Health used Meta's tools to intercept Plaintiffs' communications with Bryan Health, resulting in violations of HIPAA and an intrusion into Plaintiffs' seclusion. *See* Compl. ¶¶ 114, 137, 190. Bryan Health acted with intent to install the Pixel onto its Website to allow Meta to intercept Plaintiffs' communications and to share Plaintiffs' PHI with third parties for, at a minimum, advertising purposes, in violation of HIPAA. *Id.* ¶¶ 7, 108, 124, 210, 214. This gives rise to the application of the crime-tort exception here. *See Kurowski v. Rush Sys. for* Health, No. 22 C 5380, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023) (plaintiff plausibly stated an ECPA claim and invoked the crime-tort exception by alleging violations of HIPAA arising out of the alleged interception for marketing purposes); *Kane v. Univ. of Rochester*, No. 23-cv-6027-FPG, 2024 WL 1178340, at *7 (W.D.N.Y. Mar. 19, 2024) (same); *Castillo v. Costco Wholesale Corp.*, No. 2:23-cv-01548, 2024 WL 4785136, at *7 (W.D. Wash. Nov. 14, 2024) (same); *R.C. v. Walgreen Co.*, 733 F. Supp. 3d 876, 901-02 (C.D. Cal. 2024) (same); *see also Mekhail v. N. Mem'l Health Care*, 726 F.Supp.3d 916, 928 (D. Minn. 2024) (noting the alleged violation of HIPAA sufficient to invoke the crime-tort exception).

**a. Plaintiffs allege disclosure of personal health information sufficient to constitute a HIPAA violation.**

Defendant argues that the information Plaintiffs allege was transmitted to Meta does not constitute a HIPAA violation, and therefore Plaintiffs cannot invoke the crime-tort exception for violation of HIPAA. MTD at 13. In determining whether an alleged HIPAA violation can satisfy the crime-tort exception, courts look at what information was allegedly shared with a third party.

*See, e.g., Nienaber v. Overlake Hospital Medical Center*, 733 F. Supp. 3d 1072, 1081-83 (W.D. Wash. 2024). The information should relate "to the past, present, or future physical or mental health or condition of an individual." *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017).

Here, Plaintiffs have expressly pled that Defendants wrongfully transmitted information about users' health conditions, symptoms, treatments, doctors, and places of care. Compl. ¶¶ 13, 14, 101, 105. For example, Plaintiffs detail how the information Defendants disclosed linked identifiable individuals to "health conditions (e.g., diabetes), medications, [and] pregnancy." *Id.* ¶ 14. Plaintiffs used the Website in a way that would disclose their health conditions to Meta. *Id.* ¶¶ 25-26. This is enough. Accordingly, because Plaintiffs have alleged the disclosure of individually identifiable information regarding the "physical condition or treatment" of individuals, Plaintiffs have alleged HIPAA violations.

Defendant inaptly relies on *Smith* to support its arguments that Plaintiff did not allege HIPAA violations. The *Smith* Court analyzed the HIPAA issue in the context of general information websites like "www.cancer.net" rather than the context of medical care providers like Defendant. Plaintiffs allege Defendant disclosed detailed URLs tracking its patients' searches for conditions, doctors (including filtering by specialty), and locations for healthcare. Compl. ¶¶ 13, 14, 101, 105, 107. This is sufficient to allege the disclosure of information that relates to the past, present, or future health or condition of an individual, and thus violation of HIPAA. *See St. Aubin v. Carbon Health Techs., Inc.*, Case No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067, at *34 (N.D. Cal. Oct. 1, 2024) (holding allegations of Meta Pixel intercepting URLs that contain information regarding specific symptoms, physical conditions, or course of treatment of an individual from a care provider suffice for wiretap claims); *Kane*, 2024 WL 1178340, at *6 ("[B]ecause [d]efendant's website transmits data from which it is possible to identify a specific

individual who is seeking treatment from a specific physician, the information does relate to the provision of healthcare to an individual.").

Defendant misapplies *Nienaber*. In *Nienaber*, the information disclosed did not include any information relating to the patient's medical condition or interactions with the hospital. *See Nienaber*, 733 F. Supp. 3d (finding that the allegations in that case solely consisted of disclosure of "individually identifiable information" but ***not any allegation*** of the disclosure of "medical information" relating to their mental or physical condition or treatment). Thus, *Nienaber* is inapposite. Furthermore, on the *Nienaber* defendant's motion to dismiss plaintiff's second amended complaint, the Court found that plaintiff's amended allegations of information relating to "research[ing] specific medical conditions and symptoms, identify[ing] treatment options, pay[ing] bills, research[ing] particular doctors and specialists, and log[ging] into [d]efendant's private patient portal" plausibly relate to the provision of healthcare to be protected by HIPAA. *Nienaber v. Overlake Hosp. Med. Ctr.*, No. 2:34-cv-01159-TL, 2025 U.S. Dist. LEXIS 38654, at *12-13 (W.D. Wash. Mar. 4, 2025). The allegations in Plaintiffs' Complaint suffice.[6]

Defendant's reliance on *Becerra* is similarly misguided. MTD at 16. *AHA v. Becerra*, 738 F. Supp. 3d 780, 789-90 (N.D. Tex. June 20, 2024), involved an association of hospitals which challenged a specific hypothetical contained within the HHS guidance, offered as exemplar HIPAA violations. In that hypothetical, HHS suggested that disclosing "a visit" on a webpage that does not require a login to access, along with the IP address of the user, constitutes the wrongful disclosure of PHI. *Id*. at 789. The *Becerra* Court found that by labeling the interaction as disclosing IIHI,[7] HHS was required to show that each disclosure of visits and IP addresses

[6] To the extent the Court determines more specificity is required, Plaintiffs are prepared to amend their allegations with more specificity and file an amended complaint under seal.
[7] The *Becerra* Court utilizes the term IIHI where Plaintiffs use the term PHI in their Complaint.

related to a user's past, present or future physical or mental health or condition. *Id.* at 801-82. HHS failed this requirement because, even if *most* people visited the webpages for care for their own illnesses, *all* such visit and IP address disclosures must qualify for HHS's guidance to conform to HIPAA requirements. *Id.* In addition, the *Becerra* Court found that, absent requiring the user's subjective intent, the combination of disclosing visits and IP addresses "could never fit HIPAA's definition of IIHI." *Id.* at 803. Here, separate and apart from the hypothetical posed to the *Becerra* Court, Plaintiffs' allegations do meet the requirements of IIHI. Plaintiffs have specifically alleged that the information disclosed by Defendant would allow third parties to reasonably identify Plaintiffs via their Facebook profile (*see* Compl. ¶¶ 6, 8, 85, 98) and identify the condition and treatment of individually identifiable individuals via Plaintiffs' search terms, search for doctors via filtering by specialty, and searches for care locations. *Id.* ¶ 105; *see Cousin*, 702 F. Supp. 3d, at 973 (holding the filtering of physician directory by specialty "survives dismissal by demonstrating that [plaintiff's] interactions plausibly relate to the provision of health care"); *see also R.C. v. Walgreen, Co.*, 733 F. Supp. 3d 876, 893 ("Plaintiffs have, therefore, adequately alleged that their 'medical information' was shared with third parties.").

**b. Bryan Health's use of the intercepted data for monetary gain does not preclude the application of the crime-tort exception.**

Defendant also contends that a pecuniary motive prevents application of the crime-tort exception under § 2511(2)(d). MTD at 17; Defendant's "broad theory that the presence of a primary financial motive inoculates a defendant from liability under the ECPA is wrong." *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F.Supp.3d 369, 382 (S.D.N.Y. 2024). Defendant cites *Okash v. Essentia Health* to say that the use of Plaintiffs' data for "economic value" does not meet the crime-tort exception. No. 23-482-JRT/LIB, 2024 WL 1285779, at *4 (D. Minn. Mar. 26, 2024). The *Okash* Court made clear, however, that "subsequent advertising may be an independent act

from the underlying interception[,]" but that plaintiff did "not allege the advertising itself was tortious." *Id.* at *12-13. The Complaint here, unlike in *Okash*, alleges those facts. Compl. ¶¶ 19, 124.

The basis for finding a criminal purpose does not rest solely on Bryan Health's disclosure or Meta's interception. Courts have recognized that HIPAA not only prohibits the disclosure of PHI, but also provides "criminal penalties where 'the offense is committed with intent to sell, transfer, or use individually identifiable health information for commercial advantage, personal gain, or malicious harm.'" *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F.Supp.3d 369, at 375 fn. 4 (S.D.N.Y. July 30, 2024) (quoting 42 U.S.C. §1320d-6(b)(3)). The criminal and tortious purpose is underpinned through Bryan Health's business arrangement with Meta, which reveals Bryan Health's intent to profit commercially from exploiting PHI, in violation of HIPAA. *See, e.g., Jarrell v. Adena Health Sys.*, Case No. 2:24-cv-00282, 2025 U.S. Dist. LEXIS 6169, at *11-13 (S.D. Oh. Jan. 13, 2025) (concluding the use of tracking tool to intercept PHI was tortious "entirely by design" where the "purpose for installing tracking tools on [defendant's] site was to intercept communications from its patients in order to disclose such communications to a third party" for marketing purposes); *Cooper*, 742 F.Supp.3d at 383 (finding defendant's "business arrangement with Facebook" to exploit legally protected information sufficed to infer criminal intent); *Kane*, 2024 WL 1178340, at *7 (finding the use of legally protected information for marketing purposes "was sufficient to invoke the crime-tort exception"); *Kurowski*, 2024 WL 3455020, at *6 (N.D. Ill. July 18, 2024) (finding defendant acted "with the conscious desire to to knowingly make unauthorized disclosures of [PHI] to Facebook" for purposes of invoking the crime-tort exception); *Castillo*, 2024 WL 4785136, at *6 ("[T]here is no bright-line rule insulating financial motives from the crime-tort exception."); *Gay v. Garnet Health*, No. 23-cv-06950 (NSR), 2024 WL 4203263, at *4-5 (S.D.N.Y. Sept. 16, 2024) (finding Second Circuit precedent,

as well as precedent in other circuits, supported invoking the crime-tort exception for wiretapping allegations involving the interception of legally protected information for marketing purposes); *Walgreen Co.*, 733 F. Supp. 3d, at 901 ("[E]ven where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply . . . .").

Crimes and torts are often motivated by profit, and "it defies common sense that a clearly harmful act could escape liability as long as it was done for profit." *Kurowski*, 2024 WL 3455020, at *5 (citing *Mekhail v. N. Mem'l Health Care*, 2024 WL 1332260, at *5 n.4 (D. Minn. Mar. 28, 2024)). Even should this Court find that Bryan Health's "purpose" in employing the tracking technologies was for purposes of improving its advertising outcomes and its profit margins, this does not foreclose a determination that Defendant did not also "consciously desire" to make unauthorized disclosures of Plaintiffs' Sensitive Information to achieve that goal. *See id.* At bottom, Bryan Health's profit motives do not excuse its conduct at the motion to dismiss stage. *Gay*, 2024 WL 4203263, at *4; *Kane*, 2024 WL 1178340, at *7 (allowing Wiretap Act claim to proceed under tort-crime exception where defendant used Pixel to enhance marketing efforts).

Bryan Health cannot evade liability under §2511(2)(d). The crime-tort exception applies to the interception of Plaintiffs' communications with the Website. Bryan Health's ostensible status as a party to Plaintiffs' communications, and purported consent provided by Bryan Health, therefore, still do not immunize it from Plaintiffs' ECPA claim.

***3. Bryan Health procured the interception of the contents of Plaintiffs' communications.***

Plaintiffs allege that Meta intercepted Plaintiffs' communications to Defendant at the time of sending from Plaintiffs' web browsers. *See* Compl. ¶¶ 65, 106. Defendant attempts to reframe Plaintiffs' allegations, claiming instead that Bryan Health shared information from its own records and storage. MTD at 10-11. Defendant also contends that the complaint does not allege

Bryan Health captured the "contents" of any communication. MTD at 18-20. Defendant mischaracterizes Plaintiffs' complaint and misunderstands legal precedent concerning "contents."

**a. "Interception"**

Contrary to Defendants' assertions (*see* MTD at 11), Plaintiffs allege that Defendant's users had the contents of their communications with Defendant intercepted by Facebook *while* communicating with Defendant. Compl. ¶ 36. This interception occurred inside user's browsers, where the Pixel triggered "[u]pon clicking "Search" . . ., or looking for a care location or doctor . . . ." *Id.* ¶¶ 65, 106. Said another way, the interception occurred "in the *contemporaneous* acquisition of the communication," as required for an actionable interception under the Wiretap Act. *Steve Jackson Games, Inc. v. U.S. Secret Serv.*, 36 F.3d 457, 460 (5th Cir. 1994) (quoting *U.S. v. Turk*, 526 F.2d 654, 658 (5th Cir.), *cert. denied*, 429 U.S. 823 (1976)) (emphasis added).

While a Plaintiff must do more than "merely restate[] the pleading requirement of real time interception," *Esparza v. Gen. Digit. Inc.*, Case No. CV 23-8223-KK-AGRx, 2024 U.S. Dist. LEXIS 28132, at *10 (C.D. Cal. Jan. 16, 2024), "a plaintiff is not expected to prove or even know how and when its communications were captured . . . ." *D'Angelo v. Penny Opco, LLC*, Case No. 23-cv-0981-BAS-DDL, 2023 U.S. Dist. LEXIS 191054, at *20 (S.D. Cal. Oct. 24, 2023); *Esparza v. UAG Escondido A1 Inc.*, Case No. 23cv0102 DMS(KSC), 2024 U.S. Dist. LEXIS 24429, at *9 (S.D. Cal. Feb. 12, 2024) (finding "allegations that [communications] are intercepted in real time" sufficiently "support the 'in transit' requirement").

Here, Plaintiffs alleged that the Pixel Events caused Plaintiffs' Sensitive Information to be sent to Meta when: (1) Tracked Users enter searches for specific symptoms, illnesses, etc.; (2) Tracked Users search for and filter through doctors by specialty; and (3) Tracked Users search for locations for care. *See* Compl. ¶¶ 94-106, Figures 2-7. This information was intercepted from Tracked Users' browsers while the communications between the Tracked Users and Defendant

were still ongoing. *See, e.g., id.* ¶¶ 6, 7, 65, 72, 88, 99; *James v. The Walt Disney Co*., 701 F. Supp. 3d 942, 962 (N.D. Cal. 2023) ("[O]nce [tracking code] is on the device, it then begins to intercept communications when the user makes communications to the website.") (emphasis in original). At the pleading stage, this is sufficient. *See United States v. Szymuszkiewicz*, 622 F.3d 701, 706 (7th Cir. 2010) (holding an "in flight" interception is not required for wiretap claims, but rather a functional analysis of "interception" was more appropriate, looking to whether an interceptor and recipient of a communication "would have received each message with no more than an eyeblink in between").

**b. "Contents"**

"[D]ivulging a URL containing [a] search term to a third party could amount to a disclosure of the contents of a communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1108-09 (9th Cir. 2014). Where the "contents" of a communication refer to "the intended message conveyed by the communication, "record information" refers to the "information regarding the characteristics of the message that is generated in the course of the communication." *Id.* at 1106. Courts have held that the facts Plaintiffs allege here—communications that reveal the substance of health queries between a patient and healthcare provider—are precisely the circumstances that warrant a finding that "contents" were intercepted in violation of the ECPA. *In re Meta Pixel*, 647 F. Supp. 3d at 795-96 (observing that "descriptive URLs . . . are 'contents' within the meaning of the statute . . . because they concern the substance of a communication"); *see, e.g., Cousin v. Sharp Healthcare*, 2023 WL 8007350, at *5 (S.D. Cal. Nov. 17, 2023) ("Plaintiffs allege that their data included personal search queries—such as specialty healthcare providers and treatments for medical conditions—and therefore plausible conveyed content: their PHI."); *In re Grp. Health Plan Litig.*, 2023 WL 8850243, at *7 (D. Minn. Dec. 21, 2023) (allegations regarding interception

of "private information, including 'symptoms, medical conditions, physician lookup, treatment, medication, and scheduling'" were "sufficient to allege covered 'content'"); *Mekhail*, 2024 WL 1332260, at *3 (allegations "that substantive information, including details about medical appointments, conditions, and treatments, was obtained via the Pixel" sufficiently "pleaded that 'contents' were intercepted"); *Rush*, 2023 WL 8544084, at *3 (allegations relating to "communications about appointments, test results, prescription refills, and other treatment" were sufficiently "contents"); *see also Castillo*, 2024 WL 4785136, at *5; *McCulley v. Banner Health*, No. CV-23-00985-PHX-SPL, 2024 U.S. Dist. LEXIS 85232, at *10 (D. Ariz. May 10, 2024); *Cooper*, 742 F.Supp.3d at 380; *In re Meta Pixel Healthcare Litig.*, 647 F.Supp.3d at 796 (finding transmitted URLs that include both the path and the query string are content because "they concern the substance of a communication").

In the face of overwhelming precedent establishing that detailed URLs are "contents" of communications, Defendant pivots its argument to state that Plaintiffs' communications are "record information" and "behavior." MTD at 18-19. Even Defendant acknowledges, however, that the authority it relies on makes clear that under "some circumstances, a user's request to a search engine for specific information could constitute a communication." MTD at 19 (citing *In re Zynga Priv. Litig.*, 750 F.3d, at 1104). Without mentioning or discussing those circumstances, Defendant avers that Plaintiffs have not shown that such circumstances exist in this case. MTD at 19.

The Complaint alleges that the substantive "contents" of Plaintiffs' and Tracked Users' communications with Bryan Health were intercepted, including information related to current or potential health conditions and their symptoms, ailments, treatments, etc. and the location and expertise/specialty of doctors. *Id.* ¶¶ 6-7, 15, 25-26, 101-07. This health information goes directly to the intended message of Tracked Users' communications with the Website—sending and

obtaining information about illnesses, doctors, and locations to obtain healthcare. These allegations plausibly allege the interception of "contents."

#### 4. *The statute of limitations was tolled because Plaintiffs had no reasonable opportunity to discover the violation.*

On its face, Plaintiffs' Complaint does not present a statute of limitations issue. Plaintiffs allege that the presence and operation of the Pixel was designed to be hidden. This serves to support Plaintiffs' statute of limitations argument. Compl. ¶¶ 170-74. As such, Defendant's motion to dismiss on this basis must be denied. *See, e.g., Rita Ade et al. v. Viki, Inc.*, No. 23-cv-02161-RFL, 2024 U.S. Dist. LEXIS 79467, at *12 (N.D. Cal. Mar. 28, 2024) (denying motion to dismiss where defendant's use of the Pixel, "an invisible tracking tool," precluded earlier discovery of defendant's wrongful conduct); *see also Johannson v. Wachovia Mort. FSB*, 2011 WL 3443952, at *4 (N.D. Cal. Aug. 5, 2011) (denying motion to dismiss on statute of limitations grounds where it was plausible the plaintiff could not have reasonably suspected wrongdoing until later); *Fenerjian v. Nongshim Co., Ltd*, 72 F. Supp. 3d 1058, 1077 (N.D. Cal. 2014) (applying discovery rule despite availability of some public information).

Plaintiffs allege that Plaintiffs and Tracked Users did not and could not have known that when they used the Website, Defendant was disclosing their information and communications to third parties. This is because Defendant secretly incorporated the Pixel into the Website and provided no disclosures to consumers of the Pixel's utilization. Compl. ¶¶ 169-74

Defendant claims that Plaintiffs' allegations that the statute of limitations was tolled are conclusory. MTD at 20. They are not. *See, e.g., Gaige v. Exer Holding Co., LLC*, 2:24-cv-06099-AH-(AJRx), 2025 U.S. Dist. LEXIS 17146, at *8 (C.D. Cal. Jan. 30, 2025) (holding that statutory limitations were tolled where plaintiff did not discover the Pixel was sharing his private information because the sharing was done secretly). "A plaintiff is not required affirmatively to plead facts demonstrating that a claim is timely." *Heintze v. Wells Fargo Bank, N.A.*, No.

CV1501238MMMMANX, 2015 WL 12696455, at *6 (C.D. Cal. June 19, 2015). At best, Defendant's arguments are premature. *See Gershzon v. Meta Platforms, Inc.*, Case No. 23-cv-00083-SI, 2023 U.S. Dist. LEXIS 147448, at *37 (N.D. Cal. Aug. 22, 2023) (tolling statute of limitations at pleading stage because whether concealed use of Pixel warranted tolling was a "factual question that requires discovery"); *see also Brown*, 525 F.Supp.3d, at 1071 (denying defendant's motion to dismiss because its statute of limitations argument "puts the cart before the horse . . . as [p]laintiffs were not obligated to investigate their claims until [p]laintiffs had reason to suspect the existence of their claims").

### C. Plaintiffs State a Claim for Relief under the Nebraska Wiretap Act (Neb. Rev. Stat. § 86-297)

A violation of Nebraska Revised Statute § 86-297 occurs when an individual's wire, electronic, or oral communication is intercepted, disclosed, or intentionally used in contravention of the state's laws governing such activities. The Nebraska Wiretap Act is patterned after its federal counterpart. *Williams v. Raynor Rensch & Pfeiffer*, No. 8:11-CV-446, 2015 WL 2127095, at *13 (D. Neb. May 6, 2015) (citations omitted). For the same reasons discussed in Section B, Plaintiffs sufficiently alleged violation of the Nebraska Wiretap Act.

### D. Plaintiffs Adequately Allege a Breach of Implied Contract

"An implied contract arises where the intention of the parties is not expressed in writing but where the circumstances are such as to show a mutual intent to contract." *Linscott v. Shasteen,* 847 N.W.2d 283, 289 (Neb. 2014). Intent is gathered from objective manifestations, including, "the conduct of the parties, language used, or acts done by them, or other pertinent circumstances surrounding the transaction." *Kaiser v. Millard Lumber, Inc.,* 255 Neb. 943, 951 (1999). In the absence of an express agreement, courts recognize that the act of receiving private information creates an implied promise not to disclose that information. *See, e.g., Kirsten v. California Pizza*

*Kitchen, Inc.,* No. 2:21-CV-09578, 2022 WL 16894503, at *5 (C.D. Cal. July 29, 2022) (explaining "receipt of PII implies the recipient's assent to protect the PII sufficiently").

The District Court of Nebraska has found plaintiffs plausibly allege the existence of an implied contract where the plaintiffs allege that they were required to provide defendant with their private information as a condition for obtaining health-related insurance, and the defendant's obligation to protect the PII was a reasonable expectation due to the highly sensitive nature of the PII. *Weisenberger v. Ameritas Mut. Holding Co.,* 597 F.Supp.3d 1351, 1366-67 (D. Neb. April 7, 2022).

Here, Plaintiffs' claims involve implied promises that relate to the Defendant's receipt of Sensitive Information and assurances made in Defendant's Website's Privacy Policy ("Privacy Policy"). Compl. ¶¶ 3, 127. Defendant informed Plaintiffs that "[Bryan Health] will strive to maintain privacy, confidentiality and security at all times" and that "[Bryan Health] will not use [Tracked Users'] information without [their] permission, unless for proposes of maintaining the site or for reviewing the site's use" within its Privacy Policy. *Id.* Defendant's unauthorized disclosure of data violates the implied agreement with Website users and caused Plaintiffs' and Tracked Users' harm. *Id.* ¶ 221.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss should be denied. Should the Court grant the motion in any part, Plaintiffs respectfully request leave to amend to remedy any perceived issues.

Dated: March 17, 2025

Respectfully submitted,

**DOMINALAW GROUP, PC LLO**

By: */s/ Brian E. Jorde*
Brian E. Jorde (NE Bar # 23613)
2425 South 144th Street
Omaha, NE 68144
Telephone: (888) 387-4134
Email: bjorde@dominalaw.com

Mark S. Reich*
**LEVI & KORSINSKY, LLP**
33 Whitehall St., 17th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com

*Attorneys for Plaintiffs*

**pro hac vice* forthcoming

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies NECivR 7.1(d)(1)(A) and (d)(3) and further certify that the word count function was applied to include all text, including the caption, heading, footnotes, and quotations. This document was prepared using Microsoft Word for Office 365 and contains 8548 words, which is within the 13,000-word limit.

*/s/ Brian E. Jorde*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with The District of Nebraska's Local Rules and further state no generative artificial intelligence program was used in drafting the document.

*/s/ Brian E. Jorde*

**CERTIFICATE OF SERVICE**

I hereby certify that today, this 17 day of March 2025, I caused the foregoing document to be filed electronically with the Clerk of Court and therefore served upon all counsel of record.

*/s/ Brian E. Jorde*