**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| ROBERT BUSSARD and DANIEL GIBSON, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>BRYAN HEALTH,<br><br>Defendant. | Case No. 4:24-cv-03214-SMB-MDN |

**DEFENDANT BRYAN HEALTH'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND MEMORANDUM IN SUPPORT**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. ARGUMENT ........ 3

A. Plaintiffs Fail to State a Claim for Intrusion Upon Seclusion Because They Voluntarily Provided the Information and Cannot Establish Sharing the Information Is "Highly Offensive." ........ 3

1. There is no intrusion when a patient voluntarily provides their information. ........ 3

2. The transmitted information is not "highly offensive." ........ 5

B. Plaintiffs' ECPA Claim Must Be Dismissed. ........ 6

1. The "party exemption" applies to Bryan Health. ........ 6

2. The crime tort exception to the party exemption does not apply. ........ 8

3. Plaintiffs' allegations that Bryan Health directly sends the communications to Meta undermine Plaintiffs' "interception" theory. ........ 12

4. The identified information does not qualify as the "contents" of any Communication. ........ 13

5. Bryan Health cannot have acted with the intent to sell "individually identifiable health information for commercial advantage" where the disclosed information is merely public browsing information. ........ 14

6. Plaintiffs' Claims are Barred by the Statute of Limitations. ........ 14

C. The Nebraska Wiretap Act Must Fall with the ECPA Claim. ........ 15

D. Plaintiffs Cannot Maintain a Breach of Implied Contract Claim. ........ 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Hosp. Ass'n v. Becerra*,
738 F. Supp. 3d 780 (N.D. Tex. 2024) ..... 9
*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. Mar. 12, 2021) ..... 7, 14
*Cousin v. Sharp Healthcare*,
702 F. Supp. 3d 967 (S.D. Cal. 2023) ..... 12
*Dinerstein v. Google, LLC*,
484 F. Supp. 3d 561 (N.D. Ill. 2020) ..... 4
*Doe v. Post Acute Med., LLC*,
No. 1:24-cv-547, 2025 WL 511069 (M.D. Pa. Feb. 14, 2025) ..... 15
*Doe v. Redeemer Health*, Case,
No. 230501236, 2024 Phila. Ct. Com. Pl. LEXIS 17 (Sept. 16, 2024) ..... 4
*Esparza v. Gen. Digit. Inc.*,
2024 U.S. Dist. LEXIS 28132 (C.D. Cal. Jan. 16, 2024) ..... 12
*Goldstein v. Costco Wholesale Corp.*,
559 F. Supp. 3d 1318 (S.D. Fla. 2021) ..... 13
*Hartley v. Univ. of Chicago Med. Ctr.*,
No. 22 C 5891, 2023 WL 7386060 (N.D. Ill. Nov. 8, 2023) ..... 4, 9
*Heerde v. Learfield Commc'ns, LLC*,
No. 2:23-cv-04493-FLA, 2024 WL 3573874 (C.D. Cal. July 19, 2024) ..... 7
*In re DoubleClick Inc. Priv. Litig.*,
154 F. Supp. 2d 497 (S.D.N.Y. 2001) ..... 14
*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ..... 14
*In re Pharmatrak Inc.*,
329 F.3d 9 (1st Cir. 2003) ..... 7
*In re Trans Union Corp. Privacy Litig.*,
326 F. Supp. 2d 893 (N.D. Ill. 2004) ..... 4
*In re Zynga Priv. Litig.*,
750 F.3d 1098, 1103 (9th Cir. 2014) ..... 13
*J.C. v. Catholic Health Sys., Inc.*,
No. 1:23-cv-00796(JLS)(JJM), 2024 WL 5136236 (S.D.N.Y. Aug. 29, 2024) ..... 9
*Kaiser v. Western R/C Flyers, Inc.*,
239 Neb. 624 (Neb. 1991) ..... 5
*Kane v. Univ. of Rochester*,
No. 23-cv-6027-FPG, 2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) ..... 9, 10
*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) ..... 6
*Kurowski v. Rush Sys. for Health*,
659 F. Supp. 3d 931 (N.D. Ill. 2023) ..... 5, 6
*Mekhail v. N. Mem'l Health Care*,
726 F. Supp. 3d 916 (D. Minn. 2024) ..... 5, 7

*Nienaber v. Overlake Hosp. Med. Ctr.*,
733 F. Supp. 3d 1072 (W.D. Wash. 2024) .......... passim
*Nienaber v. Overlake Hosp. Med. Ctr.*,
No. 2:23-cv-01159-TL, 2025 WL 692097 (W.D. Wash. Mar. 4, 2025).......... 11
*Okash v. Essentia Health*,
Civil No. 23-482 (JRT/LIB), 2024 WL 1285779 (D. Minn. Mar. 26, 2024).......... 3, 5
*R.C. v. Walgreen Co.*,
733 F. Supp. 3d 876 (C.D. Cal. 2024) .......... 12
*Rodriguez v. Google LLC*,
No. 20-cv-04688-RS, 2022 WL 214552, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022) .......... 12
*Smith v. Facebook, Inc.*,
262 F. Supp. 3d 943 (N.D. Cal. 2017) .......... 1, 8, 9, 10
*Smith v. Facebook, Inc.*,
745 F. App'x 8 (9th Cir. 2018).......... 1, 9
*St. Aubin v. Carbon Health Techs., Inc.*,
No. 24-cv-00667-JST, 2024 WL 4369675.......... 9, 10
*T.D. v. Piedmont Healthcare Inc.*,
No. 1:23-cv-5416-TWT, 2024 WL 3972984 (N.D. Ga. Aug. 28, 2024) .......... 3, 4
*Weisenberger v. Ameritas Mutual Holding Co.*,
597 F. Supp.3d 1351 (D. Neb. 2022).......... 16
*Yumul v. Smart Balance, Inc.*,
733 F. Supp. 2d 1117 (C.D. Cal. 2010).......... 15

**Statutes**

18 U.S.C. § 2510(8) .......... 13
18 U.S.C. § 2511(2)(d).......... 1, 7
Neb. Rev. Stat. Ann. § 20-203 .......... 3

**Other Authorities**

Restatement (Second) of Torts § 652B (1977).......... 2, 5

## I. INTRODUCTION

Plaintiffs' Response confirms there are no factual disputes that would preclude dismissal of Plaintiffs' complaint. Plaintiffs allege they have accessed the public portion of Bryan Health's Website for both themselves and their family members. When Plaintiffs or others use the Website to search for a doctor or location or use the search bar on the website, their actions are sent to Meta via the Pixel, which tracks when specified events are taken on the Website.

The parties agree the ECPA is a one-party consent statute where any interception is not unlawful "where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(d). Because Bryan Health operated the Website on which the actions took place, Bryan Health was a party to the communication and provided consent for Meta to receive those actions when Bryan Health installed the Pixel code. The parties further agree the only way this "party exemption" does not apply is if the "crime-tort" exception applies. *Id*. Plaintiffs argue the crime-tort exception applies because Bryan Health violated HIPAA and violated Nebraska's intrusion upon seclusion law.

Plaintiffs admit that to allege a HIPAA violation they must sufficiently allege the information shared with a third party relates "'to the past, present, or future physical or mental health or condition of an individual.'" Filing No. 22 ("Resp."), 12–13 (citing *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 955 (N.D. Cal. 2017)). Plaintiffs have failed to do so. Numerous courts have rejected claims that transmission of behavior on publicly accessible websites violates HIPAA. "Put simply, the connection between a person's browsing history and his or her own state of health is too tenuous to support Plaintiffs' contention that the disclosure requirements of HIPAA . . . apply." *Smith v. Facebook, Inc.*, 745 F. App'x 8, 9 (9th Cir. 2018).

Logic also requires finding that Plaintiffs' allegations do not establish a HIPAA violation because the connection between the browsing behavior and any individual is too tenuous. A

website visitor may search for a doctor or a specific location of care for a variety of reasons. They may be looking for someone to treat their condition. They may also be looking for someone to treat a family member (as Plaintiffs allege they have done). They may be a medical sales representative who is looking for prospective buyers. Similarly, a website visitor may use the search bar for a variety of reasons. Although Plaintiffs here allege the search bar can be used by a user seeking information about symptoms related to a health condition, it can also be used to search for "contact information," "insurance," or literally anything else because it is a blank form. Although the Meta Pixel transmits the Facebook ID of the person browsing the website, the transmitted information does not suggest whether the individual is browsing for their own use, for a family member, or for a non-health related reason at all. This distinguishes this case from those that have allowed a claim involving the Meta Pixel and a healthcare entity to proceed past the pleading stage.

Plaintiffs have also failed to state a claim for intrusion upon seclusion and therefore cannot rely on this tort to meet the crime-tort exception. Courts routinely hold no intrusion exists where, as here, the Plaintiffs provided the information to the defendant. Moreover, to avoid dismissal the intrusion must be "highly offensive to a reasonable person." Plaintiffs' Response argues in one paragraph that the alleged actions meet this high standard because they are akin to the examples provided by the Restatement. Resp., 8. Plaintiffs' argument trivializes the circumstances courts have found qualify as an intrusion upon seclusion. The "interception" of a search term and users' browsing history on a public website is not "highly offensive to a reasonable person" in the way using a forged court order to obtain access to a person's bank record or taking a photograph of a person suffering from a rare disease (both examples listed in the Restatement) would be.

Plaintiffs' lawsuit is merely one of many in the past two years where individuals attempt

to obtain statutory damages from browsing a website that uses advertising tools that have been commonplace for nearly a decade. Neither Nebraska nor the Eighth Circuit have taken a position on these cases, although several other courts have rejected them where, as here, the Pixel is used only on the public portion of the website. This Court should reject Plaintiffs' arguments and dismiss the complaint.

## II. ARGUMENT

### A. Plaintiffs Fail to State a Claim for Intrusion Upon Seclusion Because They Voluntarily Provided the Information and Cannot Establish Sharing the Information Is "Highly Offensive."

The parties agree Nebraska codified its common law "invasion of privacy" as Neb. Rev. Stat. Ann. § 20-203. Filing No. 16 ("Op. Br."), 7; Resp., 5. To state a claim under this statute, Plaintiffs must allege Bryan Health "trespass[ed] or intrude[d] upon" Plaintiffs in their "place of solitude or seclusion" ***and*** that such "intrusion would be highly offensive to a reasonable person." Neb. Rev. Stat. Ann. § 20-203.

#### 1. There is no intrusion when a patient voluntarily provides their information.

Bryan Health's opening brief established where, as here, a plaintiff voluntarily provides their information to a third party, including a medical provider, the plaintiff cannot later claim intrusion upon seclusion. Op. Br., 8 (citing *T.D. v. Piedmont Healthcare Inc.*, No. 1:23-cv-5416-TWT, 2024 WL 3972984, at *2 (N.D. Ga. Aug. 28, 2024) (collecting cases from multiple jurisdictions); *Okash v. Essentia Health*, Civil No. 23-482 (JRT/LIB), 2024 WL 1285779, at *7 (D. Minn. Mar. 26, 2024); *Nienaber v. Overlake Hosp. Med. Ctr.*, 733 F. Supp. 3d 1072, 1088–89 (W.D. Wash. 2024).

Plaintiffs' Response does not address this authority and instead argues "a reasonable expectation of privacy typically exists where a plaintiff is transmitting health related information

to a medical care provider." Resp., 6. As an initial matter, what Plaintiffs allege was sent to Meta is not "health related information" as explained in Section B.2. Regardless, Bryan Health's cited authority considered, and rejected, this very argument. *T.D.*, 2024 WL 3972984, at *2. Although Plaintiffs argue "that Plaintiffs willingly sent health information to Defendant does not determine the outcome of Plaintiffs' intrusion upon seclusion claim" (Resp., 6), courts have unambiguously held it does: "There is no intrusion upon privacy when a patient voluntarily provides personally identifiable information and protected health information to his or her healthcare provider." *T.D.*, 2024 WL 3972984, at *2.

Plaintiffs also argue the "intended purpose" of the communication must be examined. Resp., 6 (citing *Doe v. Redeemer Health*, Case No. 230501236, 2024 Phila. Ct. Com. Pl. LEXIS 17, at *1 n.2 (Sept. 16, 2024)). In *Doe*, the court rejected the defendant's argument after finding the plaintiffs did not allege their provision of the information constituted an intrusion but rather the tracking and transmission of the information did. 2024 Phila. Ct. Com. Pl. LEXIS 17 at *1 n.2. The *Doe* court was wrong. As other courts have recognized, "disclosures of private personal information 'do not support a claim for unauthorized intrusion.'" *Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 594 (N.D. Ill. 2020) (quoting *In re Trans Union Corp. Privacy Litig.*, 326 F. Supp. 2d 893, 902 (N.D. Ill. 2004)); *see also Hartley v. Univ. of Chicago Med. Ctr.*, No. 22 C 5891, 2023 WL 7386060, at *3 (N.D. Ill. Nov. 8, 2023) ("Since Plaintiff is complaining about what she thinks UCMC told Facebook, her complaints are with the publication, and not any intrusion, which she probably initiated."). Bryan Health's opening brief cited *Hartley*. Op. Br., 15, 17. Plaintiffs chose not to respond to it.

Unable to deny Plaintiffs voluntarily submitted the information to Bryan Health, Plaintiffs next argue they did not voluntarily submit their Facebook ID, which was sent to Meta. Resp., 7.

The FID was something Meta created, however, and already part of Meta's records. Filing No. 1, ¶ 71 (alleging Facebook maintains the FID "for years in some cases"). Moreover, courts have dismissed intrusion upon seclusion claims even where the Meta Pixel was at issue. *See, e.g.*, *Okash*, 2024 WL 1285779 at *7 ("Courts generally agree that when a plaintiff voluntarily browses a healthcare website, there is no intrusion when the Pixel transmits the information to Meta."); *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 933–934 (N.D. Ill. 2023).

Finally, Plaintiffs argue in their Response that they allege Meta, not Bryan Health, is the "intercepting party." Resp., 9–10. As discussed in Section B.1, this position is contrary to the factual allegations in Plaintiffs' complaint. If the court allows plaintiffs to allege Meta is the intercepting party, however, then Plaintiffs' intrusion claim must consequently be dismissed. *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 936 (D. Minn. 2024) ("[A]n intrusion by [the defendant] cannot be plausibly alleged where [the plaintiff] concedes that it was Meta (or Meta's Pixel), rather than [the defendant], that made the interception.").

**2. The transmitted information is not "highly offensive."**

Plaintiffs' argument trivializes the circumstances courts have found qualify as an intrusion upon seclusion. Resp., 8 (citing *Kaiser v. Western R/C Flyers, Inc.*, 239 Neb. 624, 631–32 (Neb. 1991) (citing RESTATEMENT (SECOND) OF TORTS § 652B (1977))). The "interception" of a search term and users' browsing history on a public website is not "highly offensive to a reasonable person" in the way wiretapping by a private detective or using a forged court order to obtain access to a person's bank record would be. Moreover, the Restatement provides further examples that establish what level of behavior is required to be "highly offensive," including taking a photograph of a person suffering from a rare disease without their consent. *Kaiser*, 239 Neb. 624 at 631. Sharing that a website visitor searched for doctor or care locations or used a search bar on the

public portion of a website is not similar enough to the examples provided by the Restatement to allow this claim to continue.

**B. Plaintiffs' ECPA Claim Must Be Dismissed.**

**1. The "party exemption" applies to Bryan Health.**

Plaintiffs argue Bryan Health's status as a party to the conversation only exempts Bryan Health's conduct where it is the "intercepting party" and not its role in allowing Meta to intercept the communications. Resp., 9.

Initially, Plaintiffs' complaint repeatedly alleges Bryan Health "shared" the communications with Meta. Filing No. 1, ¶¶ 7, 8, 107. Meta therefore cannot "intercept" any message because the information was received from Bryan Health and not while in transmission from Plaintiffs. *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002). Plaintiffs argue they have elsewhere (inconsistently) alleged Meta was the intercepting party. Resp., 9 (citing Filing No. 1 at ¶¶ 15, 20, 23, 58, 107). These allegations do not support Plaintiffs' argument. Paragraph 20 simply describes Facebook's "unlawful data collection." Filing No. 1, ¶ 15. Paragraph 23 alleges by implementing the Pixel on its website Bryan Health caused "the collection and sharing of Plaintiffs" information." *Id.* at ¶ 23. This suggests Bryan Health collected the information and shared it with Meta. Paragraph 58 alleges Meta generated revenue through advertising, which has no impact on which party was the alleged "interceptor." *Id.* at ¶ 58. Paragraph 107 alleges Facebook receives information from Bryan Health and causes the transmission of users information. *Id.* at ¶ 107. This again suggests Bryan Health merely passes on information from its own records. Although paragraph 15 alleges Facebook intercepted the communications, it also expressly states Bryan Health intercepted the communications. *Id.* at ¶ 15. Plaintiffs' allegations are contradictory and fail to support a claim for violation of the ECPA.

Assuming, *arguendo*, that Plaintiffs had alleged Meta was the party who intercepted their communications, Plaintiffs' position is nevertheless contrary to established law. *Kurowski*, 659 F. Supp. 3d. at 937 (rejecting argument that health entity's duplication and forwarding of patients' data to Facebook precluded defendant from invoking party exception); *Mekhail*, 726 F. Supp. 3d. at 927. The party exception applies where the alleged interceptor "is a party to the communication ***or*** one of the parties to the communication has given prior consent to such interception." 18 U.S.C. § 2511(2)(d) (emphasized). Bryan Health was unquestionably one of the parties to the communication as Plaintiffs allege. Filing No. 1, ¶ 13 ("a Tracked User inputs information into the Website"); ¶ 17 ("By visiting the Website Plaintiffs . . . entrusted Defendant with their PHI."). Although Plaintiffs argue "there is nothing in the record before this Court to show that Bryan Health provided consent for Meta's interceptions," the complaint expressly alleges Bryan Health intentionally added the Pixel to the Website and did so with knowledge that it would cause the communications to be sent to Meta. *See*, *e.g.*, Filing No. 1, ¶¶ 23, 83, 116. Plaintiffs' reliance on *Heerde* and *Brown* is misplaced. Resp., 10, 11 (citing *Heerde v. Learfield Commc'ns, LLC*, No. 2:23-cv-04493-FLA, 2024 WL 3573874, at *8 (C.D. Cal. July 19, 2024); *Brown v. Google LLC*, 525 F. Supp. 3d 1049, 1063 (N.D. Cal. Mar. 12, 2021). Both cases considered California's wiretapping law, which requires consent from both parties. Bryan Health is not required to show "actual" consent by Plaintiffs to defend against an ECPA claim.

Although Plaintiffs argue any consent Bryan Health provided to Meta would be constrained by Meta's Business Tools Terms, which Plaintiffs claim prohibits Bryan Health's use of the pixel to share health information with Meta, the information Plaintiffs allege was shared is not "health information" as explained in Section B.2. Moreover, Plaintiffs misunderstand *In re Pharmatrak, Inc.*, on which they rely to support this argument. Resp., 10 (citing *In re Pharmatrak Inc.*, 329 F.3d

9, 19 (1st Cir. 2003)). There, the court considered whether the website owners provided consent when the third-party vendor misrepresented the functionality of the software. *Pharmatrak*, 329 F.3d at 12–14. There is nothing in the complaint to suggest the same situation exists here.

**2. The crime tort exception to the party exemption does not apply.**

The parties agree that in determining whether the crime-tort exception applies in a case where the plaintiff alleges the defendant violated HIPAA[1] courts look to whether the information allegedly shared with the third party relates to the past, present, or future physical or mental health or condition of an individual. Op Br., 13–14; Resp., 12–13; *Nienaber*, 733 F. Supp. 3d at 1081–83; *Smith*, 262 F. Supp. 3d at 955. The parties also agree the only information allegedly shared with Meta is when a user accesses the public portion of the Website (i.e., not a patient portal) and either (1) uses the search bar; (2) searches for and filters through doctors by specialty; and (3) looks for locations of care. Op. Br., 15; Resp., 3.

The parties disagree, however, as to the legal significance of these facts, including whether this information relates to the past, present, or future physical or mental health or condition of an individual. The position of Bryan Health and numerous courts is that it does not. Although Plaintiffs argue they allege the disclosed information "linked identifiable individuals to 'health conditions (e.g., diabetes), medications, [and] pregnancy,'" Resp., 13 (citing Filing No. 1, ¶ 14), it does not. The Complaint alleges Plaintiffs used the site not only for themselves but for others and that Bryan Health's implementation of the Pixel is used for prospective users who are considering becoming patients. Op. Br., 15. Bryan Health raised this argument in its opening brief and Plaintiffs chose to ignore it in their Response. Indeed, although Plaintiffs argue the disclosed information

[1] Plaintiff also allege the crime-tort exception applies because Plaintiffs have asserted an intrusion upon seclusion. Resp., 12. As explained in Section A, however, Plaintiffs' intrusion upon seclusion claim fails and therefore cannot serve as the reason to invoke the crime-tort exception.

links individuals to conditions such as "pregnancy" (Resp., 13), both named plaintiffs are male. Filing No. 1, ¶¶ 25, 26.

Bryan Health's opening brief also established Plaintiffs do not allege they ever disclosed their own health information to Bryan Health, that Bryan Health in turn disclosed that information to Meta, or that Plaintiffs were targeted with advertisements as a result. Op. Br., 16 (citing Filing No. 1, ¶¶ 43–95). Plaintiffs neither acknowledge these arguments in their Response nor address the case law Bryan Health cited in its opening brief that requires dismissal of Plaintiffs' complaint due to these omissions. *Id.* (citing *J.C. v. Catholic Health Sys., Inc.*, No. 1:23-cv-00796(JLS)(JJM), 2024 WL 5136236, at *13 (S.D.N.Y. Aug. 29, 2024).

Numerous courts agree with Bryan Health. Op. Br., 15 (citing *Smith*, 745 F. App'x at 9; *Nienaber*, 733 F. Supp. 3d at 1084; *Hartley*, 2023 WL 7386060, at *2; *Am. Hosp. Ass'n v. Becerra*, 738 F. Supp. 3d 780, 803 (N.D. Tex. 2024)). Plaintiffs' attempt to distinguish the case law supporting Bryan Health's position fails.[2] Plaintiffs first argue *Smith* is limited to "general information websites like 'www.cancer.net' rather . . . medical care providers like Defendant." Resp, 13. But the defendants in *Smith* included seven hospitals and healthcare organizations just like Bryan Health. 262 F. Supp. 3d at 947 n.1. In both *Smith* and the case at bar, "the connection between a person's browsing history and his or her own state of health is too tenuous to support Plaintiffs' contention that the disclosure requirements of HIPAA . . . ." *Smith*, 745 F. App'x at 9.

Unable to distinguish the Ninth Circuit's *Smith* decision, Plaintiffs argue they have alleged "Defendant disclosed detailed URLs tracking its patients' searches for conditions, doctors (including filtering by specialty), and locations for healthcare . . . is sufficient to allege the disclosure of information that relates to the past, present, or future health or condition of an

---

[2] Plaintiffs do not address or acknowledge the *Hartley* decision.

individual, and thus violation of HIPAA." Resp., 13 (citing *St. Aubin v. Carbon Health Techs., Inc.*, No. 24-cv-00667-JST, 2024 WL 4369675[3] (N.D. Cal. Oct. 1, 2024); *Kane v. Univ. of Rochester*, No. 23-cv-6027-FPG, 2024 WL 1178340, at *6 (W.D.N.Y. Mar. 19, 2024)). Plaintiffs' cited authority not only fails to support their position but in fact shows why dismissal is required. The plaintiff in *Kane* alleged the defendant configured the Pixel to share when a user scheduled an appointment with a physician and shared "communications with Defendant through its website ***and the portal***." 2024 WL 1178340, at *5 (emphasized). The court distinguished *Smith*, where the webpages at issues contained 'information about treatment options for melanoma, information about a specific doctor, search results related to the phrase 'intestine transplant,' and other publicly available medical information.'" *Id*. (citing *Smith*, 262 F. Supp. 3d at 954–55). What the *Kane*-court found insufficient is exactly what Plaintiffs allege here. The Ninth Circuit's *Smith* decision and the Western District of New York's *Kane* decision both agree: That the Bryan Health Website is configured to transmit information about a specific doctor (e.g., filtering by specialty or by location) or search results related to a medical condition such as intestine transplant, diabetes, or pregnancy does not establish a HIPAA violation or otherwise satisfy the crime-tort exception.

*St. Aubin* is not relevant to this issue. That case did not address whether use of the Meta Pixel or any other ad-tech on the public portion of a healthcare website satisfied the crime-tort exception to the party exemption. 2024 WL 4369675, at *2. The plaintiff instead asserted California's wiretapping law, which requires all parties to consent to a recording. *Id.* The court did not consider whether such disclosure violated HIPAA. *Id*.

Plaintiffs next admit *Nienaber* was correctly decided because the information disclosed did not include any information relating to the patient's medical condition or interactions with the

[3] Plaintiffs cite this as 2024 U.S. Dist. LEXIS 179067 in their Response.

hospital. Resp., 14 (citing 733 F. Supp. 3d at 1083–1084). Although Plaintiffs argue they have done so here, they have not for the reasons explained above. After Bryan Health filed its motion to dismiss and supporting brief, the *Nienaber* court issued its decision on the defendant's motion to dismiss the plaintiff's second amended complaint. *Nienaber v. Overlake Hosp. Med. Ctr.*, No. 2:23-cv-01159-TL, 2025 WL 692097, at *1 (W.D. Wash. Mar. 4, 2025) ("*Nienaber II*"). Although the court there found the plaintiff had alleged the plaintiff alleged the transmission of protected information, there is a critical difference between that case and this one. In *Nienaber II*, the plaintiff alleged the disclosed information included that the plaintiff paid bills and logged into their private patient portal. *Id.* at *4. The court therefore found the disclosure to Meta included "[t]he fact that Plaintiff sought ***and received*** medical treatment from Defendant is an identification of her status as a patient of Defendant, making this information protected despite originating from Defendant's public website." *Id*. at *6 (emphasized). Here, in contrast, Plaintiffs do not allege the Pixel was used to share anything other than that users searched for doctors, filtered by locations, or generally used the search bar. There is nothing to indicate users actually received medical care or were even searching for themselves as Plaintiffs themselves allege they used the Website to search for their families. Filing No. 1, ¶¶ 25, 26.

Finally, Plaintiffs attempt to distinguish the Northern District of Texas' *Becerra* decision. Resp., 14–15. Plaintiffs argue HHS could not show the disclosures violated HIPAA because even if most people visited the webpages for care for their own illnesses, all such visits and disclosures must qualify to conform to HIPAA requirements. *Id*. Plaintiffs argue they, in contrast to HHS, have met this requirement because they allege the information disclosed by Bryan Health would allow third parties to identify Plaintiffs via their Facebook profile and identify Plaintiffs' condition and treatment via their search terms, filtering by doctors by specialty, and searches for care locations.

*Id.* at 15 (citing Filing No, 1, ¶¶ 6, 8, 85, 98). These paragraphs merely allege a user's Facebook ID is shared with Meta in conjunction with the Pixel event. Neither these paragraphs nor any other factual allegation in the Complaint, however, establish Bryan Health discloses health information that corresponds to the user's Facebook ID. Plaintiffs instead allege they have used the Website to search for doctors and hospital locations for their family members. Filing No. 1, ¶¶ 25, 26.

Plaintiffs also cite *Cousin* and *R.C.* to support their position. Resp., 15 (citing *Cousin v. Sharp Healthcare*, 702 F. Supp. 3d 967, 973 (S.D. Cal. 2023); *R.C. v. Walgreen Co*., 733 F. Supp. 3d 876, 893 (C.D. Cal. 2024)). This authority does not support Plaintiffs' position. In *R.C.*, the court distinguished the plaintiff's claims from *Smith* and other authority because the plaintiffs had "allege[d] more than merely viewing generic medical content on a publicly facing website . . . ." 733 F. Supp. 3d at 893. And in *Cousin*, the plaintiff alleged she booked an appointment to obtain treatment for a medical condition. 702 F. Supp. 3d at 973. Here, the alleged information only shares users' browsing information.

**3. Plaintiffs' allegations that Bryan Health directly sends the communications to Meta undermine Plaintiffs' "interception" theory.**

The Complaint disproves any possible interception because Plaintiffs allege Bryan Health directly sent the information to Meta. Filing No. 1, ¶¶ 7, 8, 107, 108. Plaintiffs cannot save this issue simply by alleging an interception took place in "real time." *Esparza v. Gen. Digit. Inc.*, 2024 U.S. Dist. LEXIS 28132, at *10 (C.D. Cal. Jan. 16, 2024); *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) ("[u]sing the word 'intercept' repeatedly is simply not enough"). Plaintiffs' authority is unpersuasive because in none of the cited cases did the plaintiff include allegations that undermined its interception theory.

Plaintiffs now argue the interception occurred inside user's browsers. Resp., 18 (citing Filing No. 1, ¶¶ 65, 106). These factual allegations do not support this argument. Paragraph 65

states the information "is related through scripts ***on the website***" and Paragraph 106 is intentionally written in the passive voice; "the Pixel Event is triggered showing the pixel's transmission of the Tracked User's PHI to Facebook." Neither these paragraphs nor Paragraphs 6, 7, 65, 72, 88, and 99 establish the information is intercepted from the browser to Meta and overcome the clear allegations that the information is sent from Bryan Health's records.

**4. The identified information does not qualify as the "contents" of any Communication.**

Bryan Health's opening brief challenged Plaintiffs' failure to identify what was the "message" communicated. Plaintiffs' opposition fails to meet that challenge. Plaintiffs instead argue the transmitted information "goes directly to the intended messages of Tracked Users' communications with the Website—sending and obtaining information about illnesses, doctors, and locations to obtain healthcare." Resp., 20-21. Sending and obtaining information are actions, not the substance of any communications. Indeed, Plaintiffs allege the Pixel is triggered when an "event" is triggered. Filing No. 1, ¶ 7. These "events" are merely actions like "information Defendant could have obtained through a security camera at a brick-and-mortar store." *Goldstein v. Costco Wholesale Corp.*, 559 F. Supp. 3d 1318, 1321 (S.D. Fla. 2021).

The ECPA was enacted to extend the same protection already afforded to oral and wire communications to data and electronic transmissions. *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1103 (9th Cir. 2014). Plaintiffs' claims, however, would not merely offer the same protections that predated the ECPA but expand coverage by covering behavior rather than the contents of any communication. Plaintiffs do not allege Bryan Health recorded a conversation between a physician and their patient. Plaintiffs do not allege Bryan Health intercepted messages Plaintiffs sent through a patient portal or even chat communications Plaintiffs had on the public Website. Plaintiffs instead allege the transmission of specific actions or events Plaintiffs took on the website are the

"contents" of a communication. Sharing this behavior is not sharing the substance, purport, or meaning of any communication. 18 U.S.C. § 2510(8). Plaintiffs' claims should be dismissed.

**5. Bryan Health cannot have acted with the intent to sell "individually identifiable health information for commercial advantage" where the disclosed information is merely public browsing information.**

Bryan Health's opening brief noted some courts have held the crime-tort exception applies only where the "primary motivation" or "determinative factor" in the interception was to commit a crime or tort. Op. Br., 17 (citing *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778 (N.D. Cal. 2022); *In re DoubleClick Inc. Priv. Litig.*, 154 F. Supp. 2d 497, 514–15 (S.D.N.Y. 2001); *Brown*, 525 F. Supp. 3d at 1067). Because Plaintiffs allege Bryan Health disclosed the information to further its own commercial interests, Filing No. 1, ¶¶ 10, 18, it has failed to allege the *primary* motivation was to commit a crime or tort.

In their Response, Plaintiffs argue "[t]he criminal and tortious purpose is underpinned through Bryan Health's business arrangement with Meta, which reveals Bryan Health's intent to profit commercially from exploiting PHI, in violation of HIPAA." Resp., 16. As shown above, however, the disclosed information is not PHI but rather public browsing information. Bryan Health therefore cannot have acted with the intent to sell "individually identifiable health information for commercial advantage" where the information is merely public browsing information.

**6. Plaintiffs' Claims are Barred by the Statute of Limitations.**

Plaintiffs do not dispute the ECPA requires claims to be brought within two years, that Plaintiff Bussard began using the Website in 2012, or that Plaintiff Gibson began using the website in 2022. Neither do Plaintiffs dispute they filed this lawsuit more than two years after these events. The running of the statute is therefore apparent on the face of the complaint.

Plaintiffs argue their delay is excused because they allege the presence and operation of the Pixel was designed to be hidden. Resp., 21. For the discovery rule to apply, however, Plaintiffs must plead facts to show the time and manner of discovery and the inability to have made an earlier discovery despite reasonable diligence. *Yumul v. Smart Balance, Inc*., 733 F. Supp. 2d 1117, 1130 (C.D. Cal. 2010). Plaintiffs have failed to offer more than conclusory allegations and have failed to explain why, if Meta was using the information to show Plaintiffs advertisements, why Plaintiffs did not discover the activity in 2015 (when the Meta Pixel was introduced to the world) or at least since 2022 and when Plaintiffs filed the lawsuit. "In addition, a plaintiff claiming fraudulent concealment in federal court must meet the heightened pleading standard of Rule 9(b); that is, they must state their allegations of fraud or mistake "with particularity.' . . . Allegations that a defendant 'intentionally hid' unlawful activity are insufficient." *Doe v. Post Acute Med., LLC*, No. 1:24-cv-547, 2025 WL 511069, at *4 (M.D. Pa. Feb. 14, 2025). Plaintiffs' complaint fails to meet this standard.

**C. The Nebraska Wiretap Act Must Fall with the ECPA Claim.**

The parties agree Plaintiffs' Nebraska Wiretap Act claim presents the same issues as Plaintiffs' ECPA claim. The claims rise or fall together.

**D. Plaintiffs Cannot Maintain a Breach of Implied Contract Claim.**

Plaintiffs argue there was an implied promise from Bryan Health's Privacy policy that Bryan Health would not use information without users' permission. Resp., 23. As established in the opening brief, however, the "health-related personal information" refers only to the "name, e-mail, address, and telephone number" in conjunction with "any information on your health or medical status." Op. Br., 4 (citing Ex. A to Op. Br.). Thus, any such "promise" does not relate to what Plaintiffs allege is shared with Meta.

Moreover, Bryan Health's opening brief established courts have rejected the same argument Plaintiffs' make here. Op. Br., 21–22 (citing *Nienaber*, 733 F. Supp. 3d at 1090). Where, as here, the Plaintiffs do not allege they paid the defendant for any medical services nor alleged any consideration received by the defendant for its promise to safeguard the information, the breach of implied contract claim must be dismissed. *Nienaber*, 733 F. Supp. 3d at 1091.

Plaintiffs chose not to respond to this authority. Plaintiffs instead cite *Weisenberger v. Ameritas Mutual Holding Co.*, 597 F. Supp.3d 1351, 1366–67 (D. Neb. 2022). In that case, however, the plaintiffs alleged they had purchased an insurance policy for three years. *Id*. at 1357. Moreover, in that case the defendants required the plaintiffs to provide their highly confidential private information as a condition for obtaining health-related insurance. *Id*. at 1366. Here, there was no similar equivalent consideration Bryan Health allegedly received. Plaintiffs' authority is therefore not relevant to this dispute.

Bryan Health's opening brief also established that even if Plaintiffs could have alleged the formation of an implied contract, the Court should dismiss this claim because Plaintiffs cannot allege damages. Op. Br., 22. Plaintiffs chose not to respond to this argument and have waived the issue.

Dated: March 31, 2025

Respectfully submitted,

By: s/ Dustin L Taylor
Kamron T.M. Hasan (#25494)
HUSCH BLACKWELL LLP
14606 Branch Street
Suite 200
Omaha, NE 68154
Telephone: (402) 964-5176
Facsimile: (402) 964-5050
kamron.hasan@huschblackwell.com

Dustin L. Taylor (#54463 CO)*
HUSCH BLACKWELL LLP
1801 Wewatta Street, Suite 1000
Denver, CO 80202
Telephone: (303) 749-7200
Facsimile: (303) 749-7272
Dustin.Taylor@huschblackwell.com

*Admitted *Pro Hac Vice*

***Attorneys for Defendant Bryan Health.***

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies NECivR 7.1(d)(1)(B) and further certify the word count function was applied to include all text, including the caption, headings, footnotes, and quotations. This document was prepared using Microsoft Word for Office 365 and contains 6,092 words, which is within the 6,500 word limit.

*s/ Dustin L. Taylor*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief complies with The District of Nebraska's Local Rules and further state no generative artificial intelligence program was used in drafting the document.

*s/ Dustin L. Taylor*

**CERTIFICATE OF SERVICE**

I hereby certify that today, this 31st day of March 2025, I caused the foregoing document to be filed electronically with the Clerk of Court and therefore served upon all counsel of record.

*s/ Dustin L. Taylor*