**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| ROBERT BUSSARD and DANIEL GIBSON, on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>BRYAN HEALTH,<br><br>Defendant. | Case No. 4:24-cv-03214-SMB-MDN<br><br>**DEFENDANT'S RESPONSE TO PLAINTIFFS' NOTICE OF SUPPLEMENTAL AUTHORITY** |

Defendant Bryan Health ("Defendant"), by and through its counsel of record, hereby responds to Plaintiffs' Notice of Supplemental Authority ("NSA") (ECF No. 35) filed with the Court on June 22, 2026, purportedly in support of their Response in Opposition to Defendant's Motion to Dismiss Plaintiffs' Complaint (ECF No. 22). The NSA cites *Doe v. Baystate Health Sys., Inc.*, No. 1:25-CV-10337-JEK, 2026 WL 776861 (D. Mass. Mar. 19, 2026) and *Dellasala v. Samba TV, Inc.*, No. 3:25-CV-03470-JSC, 2026 WL 1138358 (N.D. Cal. Apr. 21, 2026). Defendant briefly responds to show that, similar to Plaintiffs' other Notice of Supplemental Authorities, the newly cited cases are both factually and legally distinguishable from the present case and do not impact the analysis of Defendant's Motion to Dismiss.

The complaint in *Baystate* presented materially different facts than those alleged here. The plaintiff was a confirmed Baystate patient of over ten years who used the website not only to search for health information and providers, but also to *log in* to Baystate's patient portal. *Baystate Health Sys., Inc.*, 2026 WL 776861, at *2. The information allegedly disclosed included requests to schedule appointments with physicians, registrations for support groups, patients' requests to log in to the patient portal, scheduling of specific procedures, and her status as a confirmed Baystate patient. *Id.* at *5. The plaintiff further alleged that approximately eighty of her specific

communications were disclosed over an identified time period. *Id.* at *2. Here, Plaintiffs did not allege they are Bryan Health patients or that they ever received medical treatment from a Bryan Health physician. ECF No. 1. Plaintiffs similarly don't allege access to any non-public portion of the website. ECF Nos. 16, 25. The Complaint identifies three categories of allegedly disclosed information: (1) searches for symptoms or illnesses; (2) searches and filters for doctors by specialty; and (3) searches for care locations. See ECF No. 1, ¶ 105. These generic browsing activities are equally available to patients, prospective patients, caregivers, and any member of the public.

The legal distinctions are equally dispositive. The *Baystate* court found the crime-tort exception applied because the plaintiff alleged Baystate violated a Massachusetts statutory invasion of privacy right that imposes a duty not to unreasonably disclose information about an individual's medical treatment to third parties without consent. *Baystate Health Sys., Inc.*, 2026 WL 776861, at *4. This is not a common law claim. It is a legislative creation that imposes duties that are substantively independent of the act of interception itself. The *Baystate* court itself acknowledged that numerous courts have found common law intrusion upon seclusion to be insufficient to trigger the crime-tort exception precisely because it "is a tort that occurs through the act of interception itself." *Id.* at *5 (*In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 145 (3d Cir. 2015)). The court distinguished that principle by noting that the alleged violation of the state privacy statute did not occur "through the act of interception" but instead through Baystate's "*use*" of the acquired data. *Id.* (emphasis in original). The interception and the tortious act were thus separate, independent steps—the precise structure the crime-tort exception requires.

Plaintiffs in this case have no equivalent state statute to invoke. Nebraska does not have a

statutory privacy right analogous to the one in *Baystate*. Plaintiffs rely exclusively on the common law tort of intrusion upon seclusion—the very type of claim the *Baystate* court identified as typically insufficient to trigger the crime-tort exception because it arises through the act of interception itself, not from some independent subsequent conduct. *Baystate* therefore does not advance Plaintiffs' position; it illuminates the deficiency in it. Without an independent statutory privacy right serving as the predicate, the crime-tort exception should not be invoked to overcome the party exemption.

*Dellasala* is likewise easily distinguishable on its facts. The case involves Samba TV, a television manufacturer that embedded a hardware chipset into Sony televisions to intercept users' private video-viewing data in real time, including everything they watched on cable television and streaming services. *Dellasala*, 2026 WL 1138358, at *1. That data was used to build comprehensive user profiles categorizing individuals by demographic attributes and political leanings, which were then sold to third-party advertisers. *Id.* at *2–3. This continuous, hardware-enabled surveillance of entertainment consumption in the home bears no meaningful factual resemblance to general browsing activity on a publicly accessible healthcare website.

The *Dellasala* court's crime-tort finding rested on California-specific privacy statutes that have no equivalent in Nebraska. *Id.* at 9-10. Those California-specific statutes supplied the independent tortious purpose necessary to survive dismissal. Nebraska has no comparable statutory or constitutional privacy framework on which Plaintiffs can rely. Plaintiffs invoke *Dellasala* for the proposition that a defendant's commercial motivation does not automatically defeat the crime-tort exception. The *Dellasala* court, consistent with a line of other California district courts, did take that position, holding that commercial purposes and monetary gain do not inherently defeat the crime-tort exception. *Id.* at *10. This principle, however, is entirely

contingent on the existence of adequately alleged state law violations serving as the independent predicate tort. The *Dellasala* court noted that the plaintiffs' claim survived because they were "not simply bootstrapping their Wiretap Act claim to their [state law] claims." *Id.* As discussed above, Plaintiffs here have no such state law privacy statute. Without a viable predicate, *Dellasala's* holding on commercial motivation provides Plaintiffs no assistance.

Neither *Baystate* nor *Dellasala* saves Plaintiffs' claims. Both cases turned on independent state statutory privacy rights that Nebraska does not have. Without a predicate crime or tort independent of the interception itself, the crime-tort exception cannot apply. Defendant's Motion to Dismiss should be granted.

Dated June 30, 2026.

BRYAN HEALTH, Defendant.

By: /s/ *Kamron T.M. Hasan*
Kamron T.M. Hasan (#25494)
HUSCH BLACKWELL LLP
14606 Branch Street, Suite 200
Omaha, NE 68154
Telephone: (402) 964-5176
Facsimile: (402) 964-5050
kamron.hasan@huschblackwell.com

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this notice complies with The District of Nebraska's Local Rules and further state no generative artificial intelligence program was used in drafting the document.

/s/ *Kamron T.M. Hasan*

**CERTIFICATE OF SERVICE**

I hereby certify that today, this 30th day of June 2026, I caused the foregoing document to be filed electronically with the Clerk of Court and therefore served upon all counsel of record.

/s/ *Kamron T.M. Hasan*